FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP 

Direct Line: +1.202.639.7265
Email: nicole.jantzi@friedfrank.com

January 31, 2024

<u>Via ECF</u>

Hon. Lorna G. Schofield
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Huckabee et al. v. Meta Platforms, Inc. et al.*, No. 1:23-cv-09152-LGS

Dear Judge Schofield:

Pursuant to Rule III.C.2 of Your Honor's Individual Rules and the Court's January 17, 2024 order (Dkt. No. 73), Defendants Bloomberg L.P. and Bloomberg Finance L.P. (together, "Bloomberg") write to inform the Court of their intent to move to dismiss Plaintiffs' First Amended Class Action Complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).[1]

As the Court is aware, Plaintiffs filed an initial complaint in this matter on October 17, 2023. At that time, Plaintiffs asserted claims for copyright infringement (direct and indirect); for violations of the Digital Millennium Copyright Act ("DMCA"); and for conversion, negligence, and unjust enrichment under state law. On December 15, 2023, Bloomberg filed a pre-motion letter informing the Court of its intent to move to dismiss all causes of action. (Dkt. No. 54, "First Dismissal Letter.") Plaintiffs responded, defending the viability of various claims but stating an intent to amend their complaint nonetheless. (Dkt. No. 66.) The Court ordered Plaintiffs to file an amended complaint. (Dkt. No. 73.)

Plaintiffs filed the Amended Complaint on January 24, 2024 (Dkt. No. 74). Plaintiffs have now withdrawn their indirect copyright infringement, DMCA and state-law claims. But Plaintiffs maintain—without substantive amendment—their claim for direct copyright infringement. As Bloomberg previously advised Plaintiffs and the Court, Plaintiffs' allegations do not plausibly support a claim of direct copyright infringement. Restating the same claim in similar language does not cure this deficiency.

To avoid dismissal, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," which requires "more than labels and conclusions" or "a formulaic recitation

---

[1]   Bloomberg proposes the following briefing schedule:  February 23, 2024 (opening papers); March 22, 2024 (opposition papers); April 5, 2024 (reply papers).

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

January 31, 2024
Page 2

of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). And a court may evaluate fair use at the motion to dismiss stage "where the facts necessary to establish the defense are evident on the face of the complaint." *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) (granting motion to dismiss on fair use grounds); *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 460 (S.D.N.Y. 2020) (same).

Here, Plaintiffs' factual allegations regarding Bloomberg and BloombergGPT span a meager *14* paragraphs (Am. Compl. ¶¶ 22–23, 43–54.) And Plaintiffs' claim for direct copyright infringement spans a mere *9* paragraphs (*id.* ¶¶ 70–78). All are presented at the level of sweeping generalization and legal conclusion. None is sufficient to meet *Twombly's* plausibility standard.

What Plaintiffs do succeed in pleading, however, is that any limited use of their works by Bloomberg was "fair use." *See* 17 U.S.C. § 107. It is hard to imagine a clearer case of fair use than Bloomberg—a world-leading news-gathering and reporting company[2]—engaging in a research project into the potential for a generative AI model to improve performance on natural language queries in a finance setting. Just as a student must read the work of others to learn syntax, grammar and concepts, it should be no surprise (nor is it an act of copyright infringement) that an AI model built to emulate human thinking must also do so. Even at the pleading stage, Plaintiffs' Amended Complaint alleges exactly this.

At paragraph 27, for example, Plaintiffs allege that Bloomberg used Plaintiffs' works "to **teach** the model grammar, vocabulary, context, and various language patterns. (Am. Compl. ¶ 27.) At paragraphs 45 through 47, Plaintiffs allege that "Bloomberg released a ***research*** paper detailing" the development of BloombergGPT. (*Id.* ¶ 45.) And at paragraphs 22–23, Plaintiffs recognize Bloomberg's role as a "financial, software, data and media company which provides a raft of media services and related products, including TV, internet and radio ***news*** programming," and as a "global business and financial information and ***news*** leader." (*Id.* ¶¶ 22–23.)

***Teaching***. ***Research***. ***News reporting***. As the Second Circuit has long held, such uses are presumptively of a "purpose and character" within the meaning of § 107—*i.e.*, fair uses—and therefore do not constitute copyright infringement. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 736 (2d Cir. 1991). In its formal briefing, Bloomberg will present an analysis of § 107's four fair use factors that confirms the presumption.[3]

By way of preview, with respect to the first fair use factor, Plaintiffs do not allege that BloombergGPT merely reproduces their works. Instead, Plaintiffs allege that LLMs like

---

[2] Indeed, this Circuit has already acknowledged that Bloomberg's status as a reporter of financial information is significant to a fair use analysis concerning Bloomberg's activities. *See Swatch Grp. Mgmt. Servs., Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 82–84 (2d Cir. 2014).

[3] Section 107 sets forth four primary factors courts use to determine whether a particular use falls within the fair use framework: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount of the work used; and (4) the effect of the use on the primary market of the copyrighted work. 17 U.S.C. § 107.

BloombergGPT[4] can "create content" such as "news articles" and "product descriptions." (Am. Compl. ¶ 29.) Accordingly, even on the face of the Amended Complaint, Plaintiffs allege that Bloomberg's use of their works is more transformative than the use found by the Second Circuit to be a fair use in *Authors Guild v. Google Books, Inc.*, 804 F.3d 202, 207 (2d Cir. 2015) (holding that "Google's making of a digital copy [of plaintiffs' books] to provide a search function . . . making available information *about* Plaintiffs' books" was a transformative (and fair) use. (emphasis in original)).

Meanwhile, Plaintiffs' Amended Complaint still fails to include any allegation that BloombergGPT has ever been made available for public use or released for commercial gain. Instead, all allegations regarding BloombergGPT are rooted in Bloomberg's research paper and news reporting regarding that paper. (Am. Compl. ¶¶ 43–54.) Broad allegations that Bloomberg is engaged in commercial activities are not sufficient to support a conclusion that Bloomberg's alleged use of Plaintiffs' works to train BloombergGPT "is of a commercial nature." 17 U.S.C. § 107(1); *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 477 (2d Cir. 2004) ("Where the defendants' use is for the purposes of 'criticism, comment . . . scholarship, or research,' 17 U.S.C. § 107, factor one will normally tilt in the defendants' favor. This presumption, moreover, is not necessarily rebutted by a concurrent commercial purpose on a defendant's part[.]" (ellipsis in original)).

As to the second and third fair use factors, the Amended Complaint does not allege that BloombergGPT "replicat[es] protected expression in a manner that provides a meaningful substitute for the original"; nor does it allege that BloombergGPT uses any more of Plaintiffs' works than necessary to accomplish its transformative purpose. *Google Books*, 804 F.3d at 220–22; Am. Compl. ¶¶ 27–28. Significantly, the relevant focus of the third factor is on "the amount and substantiality of ***what is thereby made accessible*** to a public[.]" *Google Books*, 804 F.3d at 222 (emphasis in original). Here, Plaintiffs do not allege that Bloomberg made any copies of their works (or any portions thereof) available to the public.

Finally, the fourth, market factor is concerned only with "harm that results because the secondary use serves as a substitute for the original work," rather than economic harm generally. *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014). Here, the Amended Complaint alleges that BloombergGPT is an AI model. (Am. Compl. ¶ 44.) There is no allegation that BloombergGPT serves as a substitute for Plaintiffs' works, which are books. (*Id.* ¶¶ 16–21.) Nor is there any allegation that BloombergGPT has any market function at all. At most, Plaintiffs have alleged a loss of potential licensing fees. But lost license fees cannot suffice to prove harm to the market for Plaintiffs' works. *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1265 (11th Cir. 2014).

In sum, as Plaintiffs appear to recognize, any use of their works by Bloomberg was to aid in the training of a generative AI model for research purposes, and thus falls squarely within the ambit of fair use.

---

[4] Plaintiffs' allegations about the capabilities of LLMs are general in nature. None is specific to BloombergGPT.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

January 31, 2024<br>
Page 4

        Respectfully submitted,

        _____
        Nicole M. Jantzi
        (nicole.jantzi@friedfrank.com)

        FRIED, FRANK, HARRIS, SHRIVER &
           JACOBSON LLP
        801 17th Street NW
        Washington, DC 20006
        Telephone: (202) 639-7265

        *Attorneys for Defendants Bloomberg L.P.*
        *and Bloomberg Finance L.P.*