

# DICELLO LEVITT GUTZLER

TEN NORTH DEARBORN STREET   SIXTH FLOOR   CHICAGO, ILLINOIS 60602

AMY KELLER
AKELLER@DICELLOLEVITT.COM
312.214.7900

February 7, 2024

**DELIVERY METHOD: CM/ECF**

Hon. Lorna G. Schofield
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:**   *Huckabee v. Bloomberg L.P., et al.*, Case No. 1:23-cv-09152 (S.D.N.Y.)

Dear Judge Schofield:

Pursuant to Rule III.C.2 of Your Honor's Individual Rules and the Court's January 17, 2024 Order (Doc. 73), we respectfully submit this letter on behalf of Plaintiffs in response to the January 31, 2024 letter of Defendants Bloomberg L.P. and Bloomberg Finance L.P. (together, "Bloomberg," Doc. 76), regarding their intent to move to dismiss the First Amended Class Action Complaint ("FAC," Doc. 74) pursuant to Fed. R. Civ. P. 12(b)(6).

Bloomberg's pre-motion letter presents two arguments in support of dismissal. *First*, Bloomberg claims the FAC's factual allegations are insufficient to meet *Twombly*'s plausibility standard. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). But it doesn't cite a specific fact or element on which the FAC falls short. The letter simply refers to the *number* of paragraphs that discuss Bloomberg's infringement and then asserts, in conclusory fashion, that those paragraphs "are presented at the level of sweeping generalization." (Doc. 76 at 2).

The FAC satisfies the two elements required to plausibly allege a claim for copyright infringement: that (1) the plaintiff owns a valid copyright and (2) the defendant engaged in unauthorized copying of the copyrighted work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 501(a). The FAC alleges that the Plaintiffs own valid copyrights in the works at issue. (Doc. 74 at ¶¶ 16-21, 72). The FAC further alleges Bloomberg engaged in the unauthorized copying of those works when it "created, copied, maintained and/or utilized the Books3 dataset, which includes unlicensed copies of the Infringed Works," without the Plaintiffs' authorization or permission. (*Id.* at ¶¶ 73-74). Accepting those allegations as true, the Plaintiffs have adequately stated a claim for relief for copyright infringement.

Hon. Lorna G. Schofield
Page 2
February 7, 2024

*Second*, Bloomberg contends that dismissal is appropriate based on the defense of "fair use." (Doc. 76 at 2). But as Plaintiffs previously explained in response to Bloomberg's first pre-motion letter, that fact-intensive, four-factor analysis cannot be resolved on a motion to dismiss in this case. Indeed, the "fact-driven nature of the fair use determination" requires district courts to "be cautious in granting [even] *Rule 56* motions in this area"—let alone a motion to dismiss based solely on the pleadings. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991) (emphasis added). Although the Second Circuit has "acknowledged the *possibility* of fair use being so clearly established by a complaint as to support dismissal" under 12(b)(6), it is generally inappropriate for dismissal at the pleading stage, before discovery has even begun. *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016) (emphasis added) (district court erred in granting 12(b)(6) motion to dismiss complaint based on fair use because "defendants' entitlement to a fair-use defense was not so clearly established on the face of the amended complaint … to support dismissal"); *see also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (fair use may be decided only where there have been factual findings "sufficient to evaluate each of the statutory factors").

The only two cases Bloomberg cites in which a court granted a 12(b)(6) dismissal based on fair use are nothing like this case. *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453 (S.D.N.Y. 2020), involved the playing of a song during a burlesque performance that created "undoubtedly[] new aesthetics" from the original song. *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537 (S.D.N.Y. 2019), involved a photograph from a news article that was copied and reproduced in a second article for the sole purpose of "illustrat[ing] criticism, commentary, or a news story *about* [the original] work." *Id.* at 544-45 (emphasis added). Bloomberg may be in the business of "news," but its unauthorized copying of the full text of Plaintiffs' works was not done for the sole purpose of comment or criticism about Plaintiffs' works.[1] Nor was it part of a transformative *performance* that created an entirely "new aesthetic" from the Plaintiffs' books. According to the FAC, Bloomberg engaged in the wholesale copying of Plaintiffs' books for the sole purpose of developing a commercial product from which Bloomberg can continue to derive significant revenue.

Premature application of the fair-use defense is particularly inappropriate in this case, given the disputed factual questions at issue. For one, Bloomberg describes itself as engaged in "scholarship" or "research," like a "student." (Doc. 76 at 2). That is hardly what the FAC alleges. In the FAC, Plaintiffs allege that Bloomberg used the full text of the copyrighted works to develop a commercial product that could operate "faster and more efficiently" than if Bloomberg had not engaged in theft, ultimately reaping millions of dollars from the "lucrative product" Bloomberg created with Plaintiffs' works. (Doc. 74 at ¶¶ 43-54). Whether Bloomberg

---

[1] For this same reason, Bloomberg's reliance on *Authors Guild v. Google Books, Inc.*, 804 F.3d 202 (2d Cir. 2015), is misplaced. There, Google used "search and snippet views" of various works to make available information "*about* Plaintiffs' books." *Id.* at 216 (emphasis added). It didn't copy and then use their full text to train and develop a commercial product, as Bloomberg did.

Hon. Lorna G. Schofield
Page 3
February 7, 2024

is in the business of offering "news" programming is beside the point. (Doc. 76 at 2). "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Harper & Row*, 471 U.S. at 564 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)). The fact that Bloomberg, a global business conglomerate, "stands to profit from exploitation of the copyrighted material without paying the customary price" weighs strongly against Bloomberg's premature, unsupported request for a finding of fair use. *Id.*

Bloomberg fares no better under the other fair-use factors. There is no question that the nature of the copyrighted works and the amount and substantiality of the works used favors Plaintiffs. Indeed, Bloomberg has abandoned its earlier argument that it did "nothing more" than "extract" and "use" uncopyrightable factual information from Plaintiffs' copyrighted works. (Doc. 54 at 2). The FAC alleges that Bloomberg engaged in the wholesale copying and use of the "*full text*" of Plaintiffs' books—including non-factual "expressive information"—without authorization. (Doc. 74 at ¶¶ 33, 48, 77). Those two factors weigh strongly against fair use. *See Harper & Row*, 471 U.S. at 569 (use of merely 300 words from manuscript constituted infringement).

The fourth factor—the effect of the infringement upon the potential market for or value of the copyrighted works—likewise weighs strongly against any fair-use argument. *See* 17 U.S.C. § 107(4). The FAC alleges that the Books3 dataset "now serve[s] as a baseline for all future LLM models" that Bloomberg may create. (Doc. 74 at ¶ 58). Pandora's box has been opened, and Bloomberg cannot "simply agree to strip the Plaintiffs' copyright-protected works out of any future data sets," because they continue to benefit from their initial, unlawful infringement. (*Id.*). Meanwhile, the "Plaintiffs have not been compensated for any of this. Their books were pirated, converted to plain text, and used" to develop Bloomberg's LLM without providing the Plaintiffs "the value for their work or licensing fees." (*Id.* at ¶ 59). Through discovery, the Plaintiffs will establish that Bloomberg has substantially harmed the market for their works, including the well-developed market for licensing. *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930-31 (2d Cir. 1994) (fourth factor favored authors of academic articles where defendant's photocopying of the copyrighted works deprived the authors of licensing fees to which they were otherwise entitled); *see also Harper & Row*, 471 U.S. at 568-69 (impact on potential licensing revenues is proper subject for consideration in assessing fourth factor). This factor—just like the other fair-use factors—cannot be resolved on a motion to dismiss in this case.

Accepting the FAC's allegations as true and construing all inferences in the Plaintiffs' favor, this Court cannot dismiss the FAC, at the pleading stage, for fair use.

Respectfully submitted,

*/s/ Amy Keller*

cc:     All counsel of record