O3jnhucc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MIKE HUCKABEE, et al.,

                Plaintiffs,

        v.                              23 Civ. 9152 (MMG)

BLOOMBERG L.P., et al.,

                Defendants.             Conference
------------------------------x
                                        New York, N.Y.
                                        March 19, 2024
                                        11:30 a.m.
Before:

                HON. MARGARET M. GARNETT,

                                        District Judge


                APPEARANCES (Via Microsoft Teams)

DiCELLO LEVITT LLP
     Attorneys for Plaintiffs
BY:  AMY E. KELLER

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
     Attorneys for Defendants
BY:  NICOLE M. JANTZI
     PAUL M. SCHOENHARD
```

O3jnhucc

1      (Case called)

2      THE DEPUTY CLERK:  Counsel, please state your

3 appearances for the record, starting with the plaintiff.

4      MS. KELLER:  Good morning, your Honor, Amy Keller, on

5 behalf of the plaintiffs.

6      MS. JANTZI:  Good morning, your Honor.  Nicole Jantzi,

7 on behalf of the Bloomberg LP and Bloomberg Finance defendants.

8 With me today is my partner Paul Schoenhard.

9      THE COURT:  Good morning, everyone.  Thank you.

10      Ms. Verneus, is the court reporter on?

11      THE DEPUTY CLERK:  Yes, that's correct.

12      THE COURT:  Okay.  We do have a court reporter, so if

13 you all want to order the transcript, I would always encourage

14 you to do that.

15      Obviously, I am new to this case, but you all have

16 been living with it for some time.  I have read all the letters

17 that you had submitted to Judge Schofield over the past six to

18 nine months.  I just want to start by asking if it's still both

19 parties' position that you are making a joint application to

20 stay discovery pending the resolution of any motions to

21 dismiss.

22      Ms. Keller?

23      MS. KELLER:  Yes.  Thank you, your Honor.

24      Initially, when we had agreed to stay discovery, from

25 the plaintiffs' position, we had thought that the timeline for

resolution of the motion to dismiss would be a little tighter. We initially filed this lawsuit in October of 2023.  We have since amended the lawsuit to have one very specific claim and that is for direct copyright infringement.  Initially, it made sense to stay discovery to see what claims would shake out of the original five I believe that we filed.  Now we have one remaining claim.

Although we previously agreed to stay discovery, the merits for doing so, at least from plaintiffs' perspective, aren't as strong, because we only have the one claim remaining. The discovery that we would be seeking would be very narrow. We are also running into -- it is now mid-March of the following year, so staying discovery seems like it's becoming a bit longer than we had anticipated for that stay.  So from our perspective, the merits for staying the discovery aren't as strong as we thought initially when we agreed.

THE COURT:  Am I understanding correctly, Ms. Keller, that the only claim that is remaining against these defendants is a direct infringement claim?

MS. KELLER:  Right.  Under 17 U.S.C. 501.

THE COURT:  The other claims were dropped once Meta and Microsoft were transferred out to California.  I know they were dismissed.

MS. KELLER:  Yes.

THE COURT:  The mechanism is a little more complicated

O3jnhucc

than I am making it, but I just want to make sure I understand what is left against this defendant.

MS. KELLER:  Sure, your Honor.

So when we severed and transferred the claims of Meta, there were still several claims against Bloomberg.  We amended the complaint to remove those claims --

THE COURT:  Okay.

MS. KELLER:  -- the other claims against Bloomberg after reviewing defendants' letters on their motion to dismission.  So it wasn't like the claims left when they transferred and severed those defendants.  It is because we actively amended the complaint to remove the other claims against Bloomberg after reviewing their letters on the motion to dismiss.

THE COURT:  Okay.  All right.  So I understand now.

That is very helpful.

Ms. Jantzi, I want to give you an opportunity to respond to that.

What is the defendants' position on staying discovery?

MS. JANTZI:  So it's still our position, as it was in the beginning, that these matters should be stayed.  This is the first I'm hearing from plaintiffs' counsel that they did not agree to go forward with the stipulation on a stay.  In fact, the last letter or rounds of letter briefs were about a month ago, and in that we made it clear to Judge Schofield that

the parties were still intending to stay.  So this is, again, news to me today that they are somewhat backing off their position.

I didn't hear from counsel that they disagreed with the stay.  I just heard an argument about the merits.  Clearly we believe the merits are still applicable regardless of whether there are the number of claims that were originally filed in October versus the direct infringement claim here.

As we have proposed in terms of our motion to dismiss, we believe we have a very good set of grounds to dismiss not only on the direct infringement claim with regard to the pleading standards of *Iqbal* and *Twombly*, but various arguments under fair use.  For those reasons alone we don't think there needs to be any further discovery and shouldn't be any further discovery to increase the costs on the parties while this motion to dismiss, which we believe has a high likelihood of success, is pending.

THE COURT:  Ms. Jantzi, while I have you on the mic, I know from the plaintiffs' letters that they have also made the argument, although I agree not objecting to the stay in their previous letters, that the fair use defenses you intend to argue in your motion to dismiss are particularly unsuitable for resolution.  At the motion to dismiss stage, of course, the likelihood of success is one of the factors I am going to consider in deciding whether to stay discovery.  If you could

1    just address that point briefly, I appreciate it.

2             MS. JANTZI:  Sure.  I guess I would start out with two

3    cases that are Second Circuit cases, *Google Books* as well as

4    *Happy Trust*.  In both of those cases you had electronic data in

5    the book space where information was actually given to the

6    public and it was found to be fair use.  Now, that wasn't in a

7    motion to dismiss context.  It was later on in the case.  But I

8    think because here we have a situation where, you know,

9    Bloomberg is, Bloomberg GPT is based on a research paper, there

10   is no allegation in the complaint that any of the information

11   or the product itself has been disseminated to the public.

12            To us, two leading cases in the Second Circuit that

13   found fair use in a situation that is much more close to

14   possibly being copyright infringement wasn't found that way, so

15   we think those cases will help us immensely.  But I think

16   backing up beyond the substantive aspects of fair use, I think,

17   you know, for purposes of the complaint in and of itself we

18   simply, you know, have, you know, lack of allegations in terms

19   of whether the product is commercial or not or whether it

20   actually is inuring some sort of benefit to Bloomberg.

21            For those reasons, we think not only a motion to

22   dismiss on the fair use grounds but also on *Iqbal/Twombly* is

23   necessary.  Since the case was filed originally in October, the

24   amended complaint was filed in January, you know, at some point

25   Bloomberg needs to respond to this complaint that is out there.

1   We really, you know, wholeheartedly believe that a motion to
2   dismiss is the way to go.
3            And, your Honor, we had been prepared and are prepared
4   to file as early as this Friday to move forward on these issues
5   to hopefully waylay plaintiffs' concerns about discovery being
6   stayed any longer.  You know, we are willing to push on this,
7   we have been willing to push on it, and we really believe this
8   should be a threshold issue.
9            THE COURT:  Believe me I 100 percent share, I think,
10  the parties' desire to move this forward.  I can assure you
11  that is the approach I intend to take.  In whatever way we move
12  forward, we are going to leave this conference today with a
13  decision and a schedule for what we're doing next.
14           Ms. Keller, I want to give you an opportunity to
15  respond if there's anything that you would like to respond to
16  what Ms. Jantzi said.
17           MS. KELLER:  I appreciate that, your Honor.  I think a
18  couple of things are pretty relevant for the discussion.
19           Number one, the cases that are being discussed, you
20  know, the Court made a decision after a fact-intensive inquiry,
21  a fact-intensive inquiry that we would be able to make after
22  obtaining discovery.
23           I also think it is important for your Honor to note
24  that the claims that we severed and transferred over to
25  California became part of the *Kodrey v. Meta* case.  Judge

1    Chhabria just denied a motion to dismiss the direct copyright
2    claims essentially under the same analysis.  The same arguments
3    were made before him, and he denied those claims.
4           So, you know, I think when we look at the kind of
5    fact-intensive analysis that you have to do for fair use, we
6    are going to have to get discovery to do that.  Additionally, I
7    think it's really important to note that, you know, it is not
8    as if these copyrighted works were in the public domain.  We
9    allege in our complaint that they were scraped.  Plaintiffs are
10   still maintaining their position that they have a valid
11   copyright and that this research paper that Bloomberg is
12   talking about was actually an illegal gathering of all of this
13   information into a source like a dataset that was used then to
14   train large language models.
15          At no point in time did plaintiffs consent to that.
16   At no point in time was this kind of scraping allowed under the
17   copyright law.  So, you know, we would just say that the Court
18   should follow the same analysis that Judge Chhabria did in
19   California and also understand that this type of inquiry,
20   unfair use is really done after the parties are able to gather
21   information to support their claims and defenses.
22          THE COURT:  Okay.  Thank you both.
23          Clearly the case involves some really novel and
24   interesting legal issues involving large language models and
25   artificial intelligence.

1          Ms. Jantzi, is Bloomberg a defendant in other similar
2  actions that are making similar claims about the works used to
3  train their large language model?
4          MS. JANTZI:  No, not at this point.
5          THE COURT:  Okay.
6          MS. JANTZI:  I would just like to, if I may, your
7  Honor --
8          THE COURT:  Sure.
9          MS. JANTZI:  -- address *Kadrey* for one moment.  I just
10  want to make very clear in those cases there were express
11  allegations that models with respect to those defendants were
12  made public and that the plaintiff's copyrights were available
13  through those mottles.
14          That's completely different from here.  Here there is
15  no allegation that Bloomberg has released Bloomberg GPT to the
16  public, and there's no allegation the actual copyrighted works
17  are available through those models, so those are two areas that
18  are different from those specific cases.
19          THE COURT:  Obviously I will look at Judge Chhabria's
20  opinion, but also this for-profit versus nonprofit issue I
21  think is at play.
22          MS. JANTZI:  Right.
23          THE COURT:  I am not asking you to take a position on
24  that.
25          MS. JANTZI:  Right.  I do think that this case is

particularly unique.  And one of the reasons why in some ways, you know, Bloomberg wanted to stay in New York and potentially have a separate action from the *Kadrey* case is because we do think we are as defendants very uniquely positioned because ours is based on research.

In fact, if you look at the amended complaint, when the information about the other defendants was taken out, not one additional factual allegation was added to that complaint. After the rounds of letters that we proposed of the factual allegation pleading, the facts, that they were insufficient, there was nothing added by the plaintiffs to actually buttress that.

I mean, there's a lot of information publicly available about Bloomberg GPT.  Nothing additional was added in the last six months.  There was opportunity to do so.  So we think that, based on the pleading standards, that simply has not been met by plaintiffs here.

We look at this as in many ways a fishing expedition. They make a lot of conclusory allegations of, hey, we have a copyright, we own it, here are the elements.  And they plead the elements, which is exactly what you are not supposed to do. You are supposed to actually give meat on the bones as to exactly what Bloomberg is doing in committing this direct copyright infringement.  It is simply not there.  There are only 14 paragraphs in the complaint about what Bloomberg did --

1       THE COURT:  Ms. Jantzi, I am just going to stop you.
2   I'm always interested, truly, in what lawyers have to say
3   especially, in an area that is a new area for me as a subject
4   matter area, but also I don't want anyone to feel like you have
5   to argue the motion to dismiss now.
6       I think I know what I would like to do.
7       Ms. Keller, obviously I gave Ms. Jantzi a lot of room
8   to talk, and it was extremely helpful to me.  I don't want you
9   to at all feel like you have to argue the motion to dismiss
10  now, because whatever decision I make on the motion to dismiss
11  is not going to be driven by the conversation we have had
12  today.  I am going to wait for the briefs.
13      But I also don't want you to feel like you didn't get
14  a fair chance to speak.  You are under no obligation to argue
15  against the motion to dismiss now.  Just to help you decide if
16  you want to say anything, I am going to set a tight briefing
17  schedule today for the motion to dismiss.  I am going to stay
18  the discovery until I receive the briefs.
19      I am not promising that I am going to stay until the
20  motion is decided, but I do think that there is reason to get
21  the briefing done and give me a chance to assess the briefing.
22  Once the briefing is completed, Ms. Keller, if you at that time
23  want to say, okay, the briefing is in and here's a letter about
24  why the plaintiffs think discovery should begin, you can send
25  me a letter at that time.  Otherwise, I will take the briefing

O3jnhucc

1  and then I'll update you as to whether I want discovery to
2  start or not.  That's what I intend to do.
3              But, Ms. Keller, I want to give you a chance to speak
4  if you want to say anything.
5              MS. KELLER:  I appreciate that, your Honor.
6              We will let the briefs speak for themselves.  We don't
7  have to create a record right now.  We can go ahead and make
8  the arguments in our briefs.
9              THE COURT:  Okay.  Terrific.
10             Ms. Jantzi, you looked like you wanted to say
11 something else.
12             MS. JANTZI:  No, I think that's it.
13             THE COURT:  I definitely agree with the parties that
14 this matter needs to move forward, so I am going to set a
15 briefing schedule for the motion to dismiss.
16             Ms. Jantzi, when would you like to have your opening
17 briefing due?
18             MS. JANTZI:  Friday is fine with us.
19             THE COURT:  I have to get on the right calendar page.
20             MS. JANTZI:  I'm sorry.  March 22.
21             THE COURT:  Yes.  Friday, March 22.  Great.
22             And then, Ms. Keller, how much time do you want to
23 respond?
24             MS. KELLER:  Your Honor, if we could have 30 days to
25 respond.

O3jnhucc

```
 1              THE COURT:  That's fine.
 2              Why don't we say Friday, April 19.
 3              MS. KELLER:  That works for us, your Honor.
 4              THE COURT:  I don't want your associates to ruin their
 5    weekend.  They can ruin their weekdays.
 6              MS. KELLER:  They appreciate that, your Honor.
 7              THE COURT:  Friday, April 19.
 8              And then, Ms. Jantzi, to reply?
 9              MS. JANTZI:  I think two weeks should be sufficient.
10              So May 3.
11              THE COURT:  Okay.  Friday, May 3.
12              My rules set out how many pages you have and the
13    normal rules about spacing and font and all that.  You should
14    try to meet those.  If you do need extra pages, just send me a
15    letter, talk to each other first, and send me a letter.
16              Okay.  Anything else that we can accomplish together
17    today?
18              MS. KELLER:  Thank you very much, your Honor.  There's
19    nothing from our side.
20              THE COURT:  Ms. Jantzi?
21              I see you shaking your head.
22              MS. JANTZI:  Nothing for the defendants.
23              THE COURT:  I see you shaking your head.
24              Okay.  Terrific.
25              I look forward to getting your briefs.
```

O3jnhucc

1          Thank you.  Have a good day.
2          (Adjourned)