UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MIKE HUCKABEE, RELEVATE GROUP, DAVID KINNAMAN, TSH OXENREIDER, LYSA TERKEURST, and JOHN BLASE *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> BLOOMBERG L.P. and BLOOMBERG FINANCE, L.P., <br><br> Defendants. | Case No. 1:23-cv-09152-MMG |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**RMP, LLP**
Seth Haines
Timothy Hutchinson
Lisa Geary
*Admitted Pro Hac Vice*
5519 Hackett St., Ste. 300
Springdale, AR 72762
Tel: (479) 443-2705
shaines@rmp.law
thutchinson@rmp.law
lgeary@rmp.law

**POYNTER LAW GROUP**
Scott Poynter
*Pro Hac Vice* application forthcoming
4924 Kavanaugh Blvd.
Little Rock, AR 72207
Tel: (501) 812-3943
scott@poynterlawgroup.com

**DICELLO LEVITT LLP**
Greg G. Gutzler
485 Lexington Ave., 10th Floor
New York, NY 10017
Telephone: (646) 933-1000
Facsimile: (646) 494-9648
ggutzler@dicellolevitt.com

**DICELLO LEVITT LLP**
Adam J. Levitt
Amy Keller
James A. Ulwick
*Admitted Pro Hac Vice*
10 North Dearborn St., 6th Floor
Chicago, IL 60602
Tel. (312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
julwick@dicellolevitt.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................ 2

ARGUMENT ......................................................................................................................... 3

    I.     The complaint plausibly states a claim for copyright infringement. .............................. 3

        A.    The First Amended Complaint alleges the Plaintiffs own valid copyrights in the works Bloomberg infringed. ........................................................................................... 3

        B.    The First Amended Complaint alleges Bloomberg's conduct constitutes infringement of the Plaintiffs' copyrights. ........................................................................ 5

    II.    Bloomberg's "fair use" defense cannot be resolved on a motion to dismiss. .................. 7

        A.    Bloomberg ignores settled precedent limiting the circumstances in which fair use may be considered on a motion to dismiss. ................................................................... 8

        B.    Disputed factual questions preclude premature application of the fair use defense in this case. ........................................................................................................................ 10

        C.    The First Amended Complaint sufficiently states a claim for copyright infringement, but if this Court disagrees, the Plaintiffs alternatively request leave to amend. ............ 20

CONCLUSION ...................................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*American Geophysical Union v. Texaco Inc.*,
    60 F.3d 913 (2d Cir. 1994)................................................................................20

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    11 F.4th 26 (2d Cir. 2021), *aff'd* 598 U.S. 508 (2023) .......................................2

*Apple Inc. v. Corellium, Inc.*,
    No. 21-12835, 2023 WL 3295671 (11th Cir. May 8, 2023)..............................15

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015)...............................................10, 13, 14, 15, 16, 17

*Authors Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014).................................................................12, 15, 17

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ..............................................................13, 15, 16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................2

*Bellikoff v. Eaton Vance Corp.*,
    481 F.3d 110 (2d Cir. 2007)...............................................................................21

*Bespaq Corp. v. Haoshen Trading Co.*,
    No. cv-04-6398, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005).........................5, 21

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006)...............................................................................18

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006)...............................................................................18

*Brody v. Fox Broadcasting Co., LLC*,
    No. 22-cv-6249, 2023 WL 2758730 (S.D.N.Y. April 3, 2023) ...........................9

*Brown v. Netflix, Inc.*,
    462 F. Supp. 3d 453 (S.D.N.Y. 2020).................................................................9

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
    87 F. Supp. 3d 499 (S.D.N.Y. 2015)...............................................................8, 20

*Cambridge University Press v. Patton*,
    769 F.3d 1232 (11th Cir. 2014) ...........................................................18, 19, 20

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)..............................................................................................1, 2

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013).................................................................................1, 8

*Clark v. Transportation Alternatives, Inc.*,
    No. 18-cv-9985, 2019 WL 1448448 (S.D.N.Y. Mar. 18, 2019)...............................9

*Cole v. John Wiley & Sons, Inc.*,
    No. 11-cv-2090, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)..................................5

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989) ....................................................................................3, 4

*Elatab v. Hesperios, Inc.*,
    No. 19-CV-9678-ALC, 2021 WL 2226877 (S.D.N.Y. June 2, 2021) ......................10

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991)................................................................................................15

*Google LLC v. Oracle America, Inc.*,
    593 U.S. 1 (2021)....................................................................................................18

*Graham v. Prince*,
    265 F. Supp. 3d 366 (S.D.N.Y. 2017).............................................................7, 18

*Grant v. Trump*,
    563 F. Supp. 3d 278 (S.D.N.Y. 2021).............................................................2, 3, 8

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)............................................................2, 7, 12, 13, 14, 17, 20

*Hughes v. Benjamin*,
    437 F. Supp. 3d 382 (S.D.N.Y. 2020).....................................................................9

*Hunley v. BuzzFeed, Inc.*,
    No. 1:20-CV-08844, 2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021) ......................10

*Kaye v. Cartoon Network Inc.*,
    297 F. Supp. 3d 362 (S.D.N.Y. 2017)....................................................................21

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003) .................................................................................15

*Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic*,
    No. 97-cv-9248, 1999 WL 816163 (S.D.N.Y. Oct. 13, 1999)............................6, 7

*Lopez v. Bonanza.com, Inc.*,
    No. 17-cv-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ........................................6

*National Basketball Association v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997)..........................................................................................15

*Nicklen v. Sinclair Broadcast Group, Inc.*,
    551 F. Supp. 3d 188 (S.D.N.Y. 2021)........................................................................16, 17

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017).........................................................................................5, 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ....................................................................................16, 17

*Sands v. What's Trending, Inc.*,
    No. 20-cv-2735, 2021 WL 694382 (S.D.N.Y. Feb. 23, 2021) ....................................8, 10

*Spinelli v. National Football League*,
    903 F.3d 185 (2d Cir. 2018)................................................................................................3

*Stewart v. Abend*,
    495 U.S. 207 (1990).........................................................................................................16

*Swatch Group Management Services Ltd. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014).........................................................................................10, 12

*TCA Television Corp. v. McCollum*,
    839 F.3d 168 (2d Cir. 2016)...............................................................................................8

*Time Inc. v. Bernard Geis Associates*,
    293 F. Supp. 130 (S.D.N.Y. 1968).....................................................................................1

*United States ex rel. Levine v. Vascular Access Centers, L.P.*,
    No. 12-cv-5103, 2020 WL 5534670 (S.D.N.Y. Sept. 15, 2020) ......................................21

*Warner Bros. Entertainment Inc. v. RDR Books*,
    575 F. Supp. 2d 513 (S.D.N.Y. 2008)...............................................................................10

*Wheeler v. Topps Co.*,
    652 F. Supp. 3d 426 (S.D.N.Y. 2023)...............................................................................21

*White v. W. Pub. Corp.*,
    29 F. Supp. 3d 396 (S.D.N.Y. 2014).................................................................................13

*Wilder v. Hoiland*,
    No. 22-cv-1254, 2024 WL 382141 (S.D.N.Y. Feb. 1, 2024) ...............................12, 13, 18

*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991)..................................................................................1, 13

*Yang v. Mic Network, Inc.*,
    405 F. Supp. 3d 537 (S.D.N.Y. 2019)...........................................................8, 9

*Yoder v. Orthomolecular Nutrition Institute, Inc.*,
    751 F.2d 555 (2d Cir. 1985)..........................................................................4

## Statutes and Rules

17 U.S.C. § 106.......................................................................................................19

17 U.S.C. § 107.........................................................................................1, 12, 17

Fed. R. Civ. P. 12..................................................................................... *passim*

## INTRODUCTION

"Fair use" is an affirmative defense to a copyright infringement suit. 17 U.S.C. § 107. It is an "open-ended," fact-intensive, "context-sensitive inquiry" based on four, non-exclusive statutory factors that must be "weighed together," not in isolation, in light of the overall purposes of copyright. *Cariou v. Prince*, 714 F.3d 694, 704-05 (2d Cir. 2013); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994). Fair use "presupposes 'good faith' and 'fair dealing.'" *Time Inc. v. Bernard Geis Assocs.*, 293 F. Supp. 130, 146 (S.D.N.Y. 1968). In this case, Bloomberg seeks to excuse the original sin of copyright infringement by misapplying the fair use doctrine prematurely.

In light of the "fact-driven nature of the fair use determination," the Second Circuit has instructed district courts to "be cautious in granting [even] *Rule 56* motions in this area." *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991) (emphasis added). Despite this guidance, Defendants Bloomberg L.P. and Bloomberg Finance, L.P. (collectively "Bloomberg") urge this Court to throw caution to the wind and dismiss the Plaintiffs' copyright infringement suit with prejudice, before discovery has taken place, based on the affirmative defense of fair use. In doing so, Bloomberg ignores settled precedent that identifies the narrow circumstances in which fair use may be considered on a motion to dismiss—circumstances that are absent here. Bloomberg also ignores the fact that every case it cites in support of the merits of its fair use defense was decided on summary judgment or after trial, not, as here, on a pre-discovery 12(b)(6) motion for failure to state a claim.

This Court should deny Bloomberg's motion to dismiss the First Amended Complaint for two reasons. *First*, in compliance with Rule 8's liberal notice pleading standards, the Plaintiffs adequately allege the only two elements needed to state a claim for copyright infringement: (1) that they own valid copyrights in the works at issue, and (2) that Bloomberg infringed those copyrights by making unauthorized use of the Plaintiffs' works. *Second*, Bloomberg cannot establish its

1

affirmative defense of fair use as a matter of law. This case does not present the one circumstance in which fair use may be decided based on the face of the complaint. That is apparent from Bloomberg's fair-use arguments, which rely on factual allegations and assumptions that do not appear in the First Amended Complaint and require this Court to draw inferences in Bloomberg's favor.

The Plaintiffs are entitled to proceed on the well-pleaded, plausible allegations in the First Amended Complaint and seek discovery to test Bloomberg's fair use defense. Bloomberg's cited cases confirm that fair use cannot be decided in a vacuum on a non-existent factual record, and they do not support dismissal of Plaintiffs' claims under Rule 12(b)(6).

## LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true the allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. "The court's function on a motion to dismiss is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Grant v. Trump*, 563 F. Supp. 3d 278, 283 (S.D.N.Y. 2021) (quotations omitted) (denying motion to dismiss copyright infringement claim based on fair use). So long as the complaint includes "enough facts to state a claim to relief that is plausible on its face," a motion to dismiss it under Rule 12(b)(6) should be denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The affirmative defense of fair use presents a "holistic," "context-sensitive," "fact-intensive" inquiry. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 37 (2d Cir. 2021), *aff'd* 598 U.S. 508 (2023) (quoting *Campbell*, 510 U.S. at 577-78). The defendants bear the ultimate burden of proving the fair use factors balance in their favor. *See id.* at 35-36, 49-50. Because fair use may be decided only where there have been factual findings "sufficient to evaluate each of the statutory factors," *Harper & Row Pub., Inc. v. Nation Enters.*, 471 U.S. 539,

560 (1985), it is "rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage," *Grant*, 563 F. Supp. 3d at 284.

## ARGUMENT

### I.  The complaint plausibly states a claim for copyright infringement.

To state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quotations omitted) (reversing 12(b)(6) dismissal of infringement claims against the NFL). The First Amended Complaint plausibly alleges both elements.

#### A.  The First Amended Complaint alleges the Plaintiffs own valid copyrights in the works Bloomberg infringed.

Bloomberg does not explicitly attack the first element of Plaintiffs' copyright claim. Instead, it erroneously suggests the Plaintiffs have not adequately identified the specific works Bloomberg allegedly infringed because the complaint does not allege "which" of the Plaintiffs' works were included in the Books3 dataset. (Doc. 87 at 4, 7). To the contrary, the First Amended Complaint alleges that each representative Plaintiff owns valid copyrights in specific works that were the subject of Bloomberg's infringement, and it alleges the precise book titles and copyright registration numbers for each of those works. (Doc. 74 ¶¶ 16-21, 72). The complaint also alleges that no one obtained a license or permission to copy "Plaintiffs' copyright-protected works before including them in the Books3 dataset" (Doc. 74 ¶¶ 38-39), and that Bloomberg infringed the Plaintiffs' copyrights when it used the Books3 dataset to develop and train its LLM (Doc. 74 ¶¶ 48-49, 72-75).

Read "as a whole," these allegations are sufficient to establish the Plaintiffs own valid copyrights in the works that Bloomberg infringed. *Cosmas v. Hassett*, 886 F.2d 8, 11-12 (2d Cir.

1989) (vacating 12(b)(6) dismissal because district court "failed to follow our mandate that on motions to dismiss, complaints should be read generously, and all inferences should be drawn in favor of the pleader"); *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985) ("It is elementary that, on a motion to dismiss, the Complaint must be read as a whole, drawing all inferences favorable to the pleader."). The Plaintiffs ultimately bear the burden of *proving*, through discovery, the specific works in the Books3 dataset and their valid ownership of copyrights in those works. At the motion to dismiss stage, however, this Court must accept as true the complaint's allegations that the Plaintiffs own valid copyrights in the works Bloomberg allegedly infringed.

Bloomberg now[1] claims the complaint must be dismissed because it is missing an allegation that the specific works identified by title and copyright registration number in Paragraphs 16-21 were included in the Books3 dataset. The inference that these works were included in the Books3 dataset, and that the Plaintiffs are suing Bloomberg for copyright infringement based on the use of that dataset, is precisely the kind of inference the Court is required to draw in Plaintiffs' favor when evaluating a motion to dismiss under Rule 12(b)(6). Given the complaint's remaining allegations and the Second Circuit's "mandate" that those allegations be read generously and as a whole, *Cosmas*, 886 F.2d at 12, the Court should reject Bloomberg's new argument.

---

[1]     Bloomberg did not raise this purported "deficiency" in either of its two pre-motion letters. The pre-motion letter requirement is designed to permit the parties to identify remediable deficiencies and avoid unnecessary, time-intensive, and expensive motion practice. Unfortunately, Bloomberg did not do so here. Nor did Bloomberg argue in its letters, or in its motion, that amendment on this point would be futile, or that amendment should be disallowed based on prejudice or bad faith.

If the Court determines, however, that the current allegations insufficiently identify the works that were infringed, the Plaintiffs can easily resolve that issue through amendment. "The rule in this Circuit [is] to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith"—showings that Bloomberg has not even attempted to make. *See Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quotations and citations omitted). Dooming Bloomberg's meritless argument, the only two cases Bloomberg cites for support were dismissals without prejudice and with leave to amend. (Doc. 87 at 8) (citing *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090, 2012 WL 3133520, *18 (S.D.N.Y. Aug. 1, 2012) (dismissal without prejudice pursuant to Rule 8); *Bespaq Corp. v. Haoshen Trading Co.*, No. cv-04-6398, 2005 WL 14841, *4 (N.D. Cal. Jan. 3, 2005) (dismissal "with leave to amend")).

**B.    The First Amended Complaint alleges Bloomberg's conduct constitutes infringement of the Plaintiffs' copyrights.**

On the second element, Bloomberg criticizes the First Amended Complaint for containing too much "background" on large language models and AI training tools, and too few paragraphs about Bloomberg. (Doc. 87 at 5-6). Of course, neither of those criticisms warrants dismissal. The allegations in the First Amended Complaint adequately state a claim against Bloomberg for copyright infringement of the Plaintiffs' works.

Specifically, the complaint alleges Bloomberg engaged in the unauthorized copying of the Plaintiffs' works when it "created, copied, maintained and/or utilized the Books3 dataset, which includes unlicensed copies of the Infringed Works," without the Plaintiffs' authorization or permission. (Doc. 74 ¶¶ 73-74). Contrary to Bloomberg's suggestion (Doc. 87 at 7), the complaint also contains factual allegations explaining "by what acts during what time" Bloomberg infringed the Plaintiffs' copyrights. According to the complaint, after the creation of the Books3 dataset containing full-text copies of the Plaintiffs' unlicensed, copyrighted works (Doc. 74 ¶¶ 34-39), and

at some point before Bloomberg introduced BloombergGPT in March 2023, Bloomberg used Books3 to create, train, and develop BloombergGPT (Doc. 74 ¶¶ 43-49).

The complaint also details, to the best of Plaintiffs' knowledge, the extent and purpose of Bloomberg's unauthorized use of Plaintiffs' works. It alleges the Books3 dataset was part of the "training corpus" Bloomberg "used to assist its LLM in learning how to recognize, parse, and respond in natural language," and that "[u]sing data from Books3"—like the Plaintiffs' copyrighted works—"enabled Bloomberg to create its LLM faster and more efficiently, and save the company a substantial amount of time, resources, and money because it would not have to pay for source material." (Doc. 74 ¶¶ 47-49). The complaint alleges that Bloomberg "gained an enormous amount of value from [its] unauthorized use of Plaintiffs' copyright-protected works" insofar as it would not otherwise have been able to train its LLM "to recognize and respond to queries in a fashion that is useful to average users." (Doc. 74 ¶ 57). The complaint also alleges that Bloomberg made unauthorized use of the Plaintiffs' works to boost profitability, improve user engagement and satisfaction, enhance marketability and revenue generating opportunities, and ultimately increase profits. (Doc. 74 ¶¶ 29, 30).

Accepting those allegations as true, the Plaintiffs adequately state a claim for infringement. Bloomberg's citations to *Lopez v. Bonanza.com, Inc.*, No. 17-cv-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019), and *Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic*, No. 97-cv-9248, 1999 WL 816163 (S.D.N.Y. Oct. 13, 1999), are not to the contrary. *Lopez* involved a *pro se* complaint for copyright infringement against an "online platform" where third-party users sell items. *Lopez*, 2019 WL 5199431 at *23. There were no allegations as to how the defendant's mere operation of a website where others posted copyrighted works was, itself, a directly infringing act. *See id.* The court in *Lindsay* dismissed only *one* of the claims of infringement, holding the plaintiff

adequately pleaded infringement as to the other defendants. *See Lindsay*, 1999 WL 816163 at *3-4. These cases are inapposite.

Bloomberg also criticizes the Plaintiffs for failing to include allegations about "when or how BloombergGPT was developed" or specific details about the internal operations of BloombergGPT and how, as a technical matter, it used or incorporated the Plaintiffs' works. (Doc. 87 at 6). The Plaintiffs cannot know this information without the benefit of discovery. The Plaintiffs have alleged what they knew and reasonably could learn about Bloomberg's training and development of BloombergGPT based on the information available to them. At this stage of the case, the Court must accept those factual allegations as true. If discovery reveals new or additional information relevant to those allegations, the Plaintiffs can seek leave to amend or Bloomberg can present that evidence for consideration on a motion for summary judgment. At this stage, however, the Plaintiffs have pleaded sufficient facts to put Bloomberg on notice as to the nature of their plausible claims—they are required to do no more.

## II. Bloomberg's "fair use" defense cannot be resolved on a motion to dismiss.

"A court cannot engage in the fair use inquiry until it has been presented with facts relevant to evaluating the fair use factors." *Graham v. Prince*, 265 F. Supp. 3d 366, 377 (S.D.N.Y. 2017) (citing *Harper & Row*, 471 U.S. at 560). The parties have not yet engaged in discovery, and Bloomberg has not identified any undisputed facts from which this Court could conclude, on a motion to dismiss, that the fair use defense applies. In fact, Bloomberg's fair use argument requires this Court to do the opposite of what is required on a motion to dismiss: it requires the Court to view the complaint in the light most favorable to Bloomberg, accepting *Bloomberg*'s view of certain facts as true and drawing inferences in *Bloomberg*'s favor. When this Court accepts the truth of the complaint's factual allegations and draws all reasonable inferences in the Plaintiffs'

favor, it is clear there are disputed factual questions that preclude pre-discovery judgment as a matter of law.

> ### A.   Bloomberg ignores settled precedent limiting the circumstances in which fair use may be considered on a motion to dismiss.

Although the Second Circuit has acknowledged the remote "possibility" of fair use being so clearly established as to support dismissal on that ground, *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016), "it is rarely appropriate for a court to make a determination of fair use at the motion to dismiss stage." *Grant*, 563 F. Supp. 3d at 284 (denying 12(b)(6) motion based on fair use). Bloomberg ignores this settled law when it asks the Court to take the extreme measure of dismissing a copyright infringement case before discovery has even begun.

Bloomberg also ignores settled precedent from this Court explaining that the only circumstance in which it may be appropriate to consider fair use on a motion to dismiss is where "the only two pieces of evidence needed to decide the question of fair use … are the original version and the allegedly infringing work." *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015) (ellipses in original); *see also Sands v. What's Trending, Inc.*, No. 20-cv-2735, 2021 WL 694382, *2 (S.D.N.Y. Feb. 23, 2021) (same). Those circumstances are not present here.

Astonishingly, Bloomberg does not even mention this limiting principle, despite its persistent presence in every case Bloomberg cites in which a district court granted a 12(b)(6) motion on fair use grounds.[2] For example, *Yang* involved a photograph from a news article that

---

[2] This principle is also clearly expressed in the cases Bloomberg relies upon in its brief, which makes it even more remarkable that Bloomberg omits any reference to the limitation. *See, e.g., Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) (quoting *Cariou*, 714 F.3d at 707) (fair use appropriate for consideration on motion to dismiss when "the only two pieces of evidence needed to decide the question … are the original version and the allegedly infringing version").

was copied and reproduced in a second article for the sole purpose of "illustrat[ing] criticism, commentary, or a news story *about* [the original] work." 405 F. Supp. 3d at 544-45 (emphasis added). The only pieces of "evidence" the court considered were the original photograph and infringing work. *See id.*

The same is true in every other case Bloomberg cites in which a complaint was dismissed on a Rule 12(b)(6) motion based on fair use. *See Brody v. Fox Broadcasting Co., LLC*, No. 22-cv-6249, 2023 WL 2758730, *3-4 (S.D.N.Y. April 3, 2023) (analyzing 12(b)(6) motion by comparing original photograph and allegedly infringing photograph as used in news broadcast); *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 454, 461-64 (S.D.N.Y. 2020) (analyzing 12(b)(6) motion by comparing original song to allegedly infringing version played during burlesque performance that created "undoubtedly[] new aesthetic"); *Hughes v. Benjamin*, 437 F. Supp. 3d 382, 387 (S.D.N.Y. 2020) (analyzing 12(b)(6) motion by comparing copyrighted video to allegedly infringing video, which was "comprised entirely of six clips of [the original work]"); *Clark v. Transp. Alternatives, Inc.*, No. 18-cv-9985, 2019 WL 1448448, *2 (S.D.N.Y. Mar. 18, 2019) (analyzing 12(b)(6) motion by comparing photographs "side-by-side").

This case is nothing like those. This is not a case in which "the only two pieces of evidence needed to decide the question … are the original version and the allegedly infringing version." *Yang*, 405 F. Supp. 3d at 542. The Plaintiffs do not allege, for example, that Bloomberg published on its website screenshots or excerpts of their books, such that the Court could simply conduct a side-by-side analysis of the Plaintiffs' works and Bloomberg's reproduction of them to determine fair use. The Plaintiffs allege Bloomberg copied the full text of Plaintiffs' written works—works collectively containing thousands of pages of unique text, syntax, grammar, sentence structure,

expression, and creative content—and baked them into its systems to develop and train Bloomberg's LLM.

Bloomberg's fair-use arguments, moreover, rely on factual assumptions, assertions, and arguments that are nowhere to be found in the First Amended Complaint or the works themselves. *See supra* at 10-15. Where fair use cannot be decided by a simple side-by-side comparison—like in all the cases Bloomberg cites for the actual *merits* of its fair use arguments—a motion to dismiss is not the proper vehicle for disposing of that affirmative defense. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 211 (2d Cir. 2015) ("*Google Books*") (determination of fair use made on motion for summary judgment); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 85 (2d Cir. 2014) (same); *Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp. 2d 513, 518 (S.D.N.Y. 2008) (ruling in favor of plaintiff against defendant's claim of fair use after bench trial).

## B. Disputed factual questions preclude premature application of the fair use defense in this case.

Even if this were the type of case in which a fair use defense *could* be resolved on a motion to dismiss (it is not), Bloomberg's fair use arguments rely on disputed factual issues that preclude pre-discovery judgment as a matter of law. *See, e.g., Hunley v. BuzzFeed, Inc.*, No. 1:20-CV-08844, 2021 WL 4482101, *3-4 (S.D.N.Y. Sept. 30, 2021) ("[d]rawing all reasonable inferences in favor of [p]laintiffs," complaint adequately stated claim for copyright infringement and defendants' fair use arguments "raise factual disputes that are not appropriate at this stage of the case"); *Elatab v. Hesperios, Inc.*, No. 19-CV-9678, 2021 WL 2226877, *4 (S.D.N.Y. June 2, 2021) (drawing all reasonable inferences in plaintiff's favor, defendant's arguments "are insufficient to make out an affirmative defense of fair use at the motion to dismiss stage"); *Sands*, 2021 WL 694382, at *2 (dismissal not warranted because plaintiff plausibly alleged facts that weigh against finding of fair use).

### 1.   Purpose and character of use

Bloomberg focuses primarily on the first fair use factor: the purpose and character of the use. For that factor, Bloomberg cherry picks the words "teach," "research," and "news reporting" from the First Amended Complaint, arguing that (1) these are the only alleged purposes of Bloomberg's theft and (2) these uses are "presumptively" fair. (Doc. 87 at 10-13). Bloomberg is wrong on both points.

*First*, the First Amended Complaint does not allege that the purpose of Bloomberg's use was teaching, research, and news reporting. The Plaintiffs allege that *Bloomberg*, as a party, is in the business of "news programming," among other things. (Doc. 74 ¶¶ 22-23). And that BloombergGPT was the *product* of Bloomberg's "research" into the viability of new LLMs. (Doc. 74 ¶¶ 44-45). But those allegations say nothing about the purpose of Bloomberg's *infringement*. The First Amended Complaint alleges that Bloomberg copied and used the Plaintiffs' works to create the company's own LLM—on par with OpenAI's GPT-3, for instance— for the ultimate "purpose of making a profit." (Doc. 74 ¶¶ 12, 43-48).

Specifically, the complaint alleges that LLMs like BloombergGPT "aid[] in content creation, such as automated news articles, reports, and creative writing," and "provide a significant competitive edge" to Bloomberg, which Bloomberg can then leverage to "improve their products and services, leading to increased market share and customer loyalty." (Doc. 74 ¶ 29). The complaint also alleges that the use of Plaintiffs' works in Bloomberg's LLM can boost profitability by "reducing labor costs and increasing efficiency," "improving user engagement and satisfaction," "enhancing marketability and revenue generating opportunities," and helping the company "make data-driven decisions and understand customer sentiment at a significantly reduced cost." (Doc. 74 ¶ 29).

Thus, according to the complaint, LLMs like the one Bloomberg has developed "not only increase[] profits by allowing companies to make new and personalized offerings to their customers, but they also save companies money by reducing their reliance on a human workforce." (Doc. 74 ¶ 30). Bloomberg ignores these factual allegations (Doc. 87 at 13), which must be accepted as true. Whether Bloomberg has, in *fact*, reduced costs, boosted efficiency, or increased revenue from their LLM product cannot be resolved by a motion to dismiss under Rule 12(b)(6).

*Second*, Bloomberg is wrong that a "presumption" of fair use applies to "news reporting" agencies or companies in the business of "research" and "news." "[A] news reporting purpose by no means guarantees a finding of fair use. After all, [t]he promise of copyright would be an empty one if it could be avoided merely by dubbing the infringement a fair use 'news report.'" *Swatch*, 756 F.3d at 85 (quoting *Harper & Row*, 471 U.S. at 557). Indeed, the Supreme Court has applied the *opposite* presumption against news reporting companies like Bloomberg that engaged in the "verbatim" copying of a copyrighted work. *Harper & Row*, 471 U.S. at 557, 559 (commercial use of copyrighted material is "presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright," even if "purpose of news reporting is not *purely* commercial") (emphasis added). Even if discovery proves in this case that monetary gain is not "the sole motive of the use," the fact that Bloomberg "*stands to profit* from exploitation of the copyrighted material without paying the customary price" weighs against a finding of fair use. *Id.* at 562 (emphasis added).

Further, it is improper to presume Bloomberg is engaged in "nonprofit educational purposes." 17 U.S.C. § 107. This case is unlike *Wilder*, in which a faculty member of a college made a presentation at an academic conference to a community of college professors and administrators that allegedly infringed another faculty member's copyright. *Wilder v. Hoiland*, No.

22-cv-1254, 2024 WL 382141, *3 (S.D.N.Y. Feb. 1, 2024) (decided on summary judgment). Bloomberg may try to liken itself to an educational institution or academically minded nonprofit (Doc 87 at 11), but the complaint alleges Bloomberg L.P. and Bloomberg Finance L.P. are privately held, limited partnerships in the "business" of selling products and with the motivation to earn profits from the unauthorized use of Plaintiffs' works (Doc. 74 ¶¶ 22-23, 29-30, 57). Bloomberg cites no authority applying a "presumption" of fair use in that context.[3]

Bloomberg also takes issue with the complaint's purported failure to allege that Bloomberg has, in fact, earned a profit from its infringement and the precise amounts of such profits. (Doc. 87 at 11-12). But Bloomberg's cited authorities make clear that no such allegations are required. For example, in the *Google Books* case (decided on summary judgment), the Court acknowledged Google had an "overall profit motivation" in the use of the plaintiffs' works, and that this "commercial motivation" was enough to make the first factor weigh in favor of the plaintiff. *See* 804 F.3d at 219. That was true even though, in that case, "Google ha[d] *no revenues flowing directly from its operation of the Google Books functions*." *Id.* at 218 (emphasis added). Rather there, as here, the plaintiff stressed that Google was "profit-*motivated* and [sought] to use its dominance of book search to fortify its overall dominance of the Internet search market," such that Google may "*indirectly* reap[] profits from the Google Books functions," even in the absence of actual, direct revenues from its infringement. *Id.* (emphasis added). The Court did not discount

---

[3]       In fact, all the cases Bloomberg cites in favor of the first fair use factor were decided on summary judgment, not a 12(b)(6) motion, underscoring the inappropriateness of pre-discovery dismissal in this case. *See Google Books*, 804 F.3d at 219 (fair use decided on summary judgment); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) (same); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 634 (4th Cir. 2009) (same); *Wright*, 953 F.2d at 736 (same); *Wilder*, 2024 WL 382141 at *1 (same); *White v. W. Pub. Corp.*, 29 F. Supp. 3d 396, 399 (S.D.N.Y. 2014) (same). *Harper & Row* was decided after a 6-day bench trial. 471 U.S. at 543.

those allegations or determine they were not sufficiently "commercial." Instead, it concluded Google's profit motivation was only *one* of the context-specific facts that factored into the fair-use analysis. *Id.* at 219.

The Plaintiffs are entitled to prove, through discovery, that Bloomberg has, in fact, reaped revenues and profits from the use of Plaintiffs' works to develop and train BloombergGPT—even if it is true, as Bloomberg asserts, that BloombergGPT has not yet been released. (Doc. 87 at 12). But even if the Plaintiffs are unable to prove direct profits or revenue Bloomberg has obtained through BloombergGPT, that would not be the end of the case. The Plaintiffs would then present evidence, on a full summary judgment record, of the commercial *motivation* of Bloomberg to make substantial profits from its use of the Plaintiffs' works, including any *indirect* profits Bloomberg was motivated to obtain or actually obtained from BloombergGPT. Bloomberg would certainly be entitled to rebut that evidence and to show, as Google did in the *Google Books* case, that the Plaintiffs' evidence did not weigh against a finding of fair use. But there is no basis from which the Court could make that ruling at this stage of the case. *See Harper & Row*, 471 U.S. at 564 (the fact that company "stands to profit from exploitation of the copyrighted material without paying the customary price" weighs against fair use).

Finally, Bloomberg suggests, as a factual matter, that the purpose of Bloomberg's infringement was to "gain the benefit of [the works'] unprotectable facts and ideas, such as grammar and vocabulary." (Doc. 87 at 13). But that is contrary to the allegations in the First Amended Complaint that Bloomberg engaged in the wholesale copying and use of the "full text" of Plaintiffs' books, including non-factual "expressive information," without authorization. (Doc. 74 ¶¶ 33, 48, 77). It is also contrary to the alleged purpose of Bloomberg's infringement, which is not solely to gain access to "unprotectable facts and ideas" (Doc. 87 at 13) but to create,

develop, and enhance a product that can parse natural language, better "recognize and respond to queries in a fashion that is useful to average users," and more "closely resemble[] human-generated output" like the creative expression in Plaintiffs' works. (Doc. 74 ¶¶ 27-29, 48, 57).[4]

Those allegations are not like the "search engines" and plagiarism-detection tool at issue in the cases Bloomberg cites (Doc. 87 at 14-15)—all of which were decided on summary judgment. *See, e.g.*, *Google Books*, 804 F.3d at 216-17 (concluding on full summary judgment record that search function involved "highly transformative purpose"); *HathiTrust*, 755 F.3d at 96 (same); *iParadigms*, 562 F.3d at 638 (concluding on full summary judgment record that database to evaluate plagiarism in students' essays was fair use); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (concluding on summary judgment that a search engine using thumbnail images of plaintiff's works was fair use). Bloomberg's alleged use of the Plaintiffs' works is also unlike the "security research[]" platform at issue in *Apple Inc. v. Corellium, Inc.*, No. 21-12835, 2023 WL 3295671, *3 (11th Cir. May 8, 2023) (concluding on full summary judgment record that fair use applied to security platform that used iOS "for security researchers in practice").

To the extent Bloomberg seeks to put new, unalleged facts at issue—such as its assertion about what BloombergGPT "does" and "does not" do (Doc. 87 at 15)—those facts cannot be considered on a motion to dismiss. Accepting the complaint's allegations as true, the first fair use factor does not weigh in favor of Bloomberg.

---

[4]     Bloomberg repeatedly suggests, without citation, that "grammar, vocabulary, context, and … language patterns" are "unprotectable facts and ideas." (Doc. 87 at 13, 17 n.14). But it is well settled that the arrangement and composition of language in a written work are protected expression. *See Google Books*, 804 F.3d at 220 ("[W]hile the copyright does not protect facts or ideas set forth in a work, it does protect that author's manner of expressing those facts and ideas."). The two cases Bloomberg cites regarding "unprotectable" information involved facts such as names, telephone numbers, and statistics. *See Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991) (names, towns, and telephone numbers); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 847 (2d Cir. 1997) (scores and data regarding basketball games).

### 2. Nature of copyrighted work

There is no question the nature of the copyrighted works favors Plaintiffs. Bloomberg does not dispute that the Plaintiffs' works contain protectable expression. *See, e.g.*, *Google Books*, 804 F.3d at 220. It simply argues that this factor is "not … significant" and falls back on its arguments regarding the first fair use factor. (Doc. 87 at 16). But even Bloomberg's cited cases explain that "a use is less likely to be deemed fair when the copyrighted work is a creative product," and that "a work is entitled to greater copyright protection as it comes close to the core of creative expression." *iParadigms*, 562 F.3d at 640 (quoting *Stewart v. Abend*, 495 U.S. 207, 237 (1990)). Because this factor is viewed along a continuum and depends on an in-depth analysis of the works at issue, it does not favor Bloomberg at this stage of the proceeding.

### 3. Amount of work used

Bloomberg's arguments with respect to the third fair use factor—the amount of work used—do not justify dismissal. In fact, although Bloomberg bears the ultimate burden of proving the affirmative defense of fair use, it argues only that the third fair use factor "does not weigh *against* a finding of fair use." (Doc. 87 at 17). Even assuming that were true, it does nothing to establish Bloomberg's entitlement to a finding of fair use. The First Amended Complaint alleges Bloomberg engaged in the wholesale copying and use of the "*full text*" of Plaintiffs' books— obtained from a shadow library—without authorization. (Doc. 74 at ¶¶ 33, 48, 73, 77). Those allegations are enough to establish, at the pleading stage, that the third fair use factor weighs in Plaintiffs' favor. *See Nicklen v. Sinclair Broadcast Grp., Inc.*, 551 F. Supp. 3d 188, 198 (S.D.N.Y. 2021) (third factor weighed against fair use where defendants copied the "entire[ty]" of work).[5]

---

[5] *Nicklen* distinguished *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), cited by Bloomberg (Doc. 87 at 14 n.13), because *Nicklen* did not involve a search engine and the defendants' other fair use arguments raised material factual disputes that "cannot be resolved at

The Plaintiffs are entitled to prove that the third factor weighs against fair use based on Bloomberg's copying of the full-text of their works. *See Nicklen*, 551 F. Supp. 3d at 198. It may be the case that Bloomberg's "use of the original works" proves to be more "limited in purpose and scope," like the uses in *iParadigm, Google Books*, and *HathiTrust*. (Doc. 87 at 17). But that finding must be based on a developed factual record. *See Harper & Row*, 471 U.S. at 569 (analysis of fair use factors must be based on factual findings and concluding, after record developed in 6-day bench trial, that use of merely 300 words from manuscript constituted infringement). The findings in those cases were not made on motions to dismiss, and a similar finding cannot be made at the pleading stage here.

### 4. Effect of use on primary market of copyrighted work

The fourth factor—the effect of the infringement upon the potential market for or value of the copyrighted works—likewise weighs strongly against any pre-discovery findings of fair use. *See* 17 U.S.C. § 107(4). Bloomberg's principal arguments on this factor depend on numerous factual assertions and inferences Bloomberg asks this Court to draw in *its* favor, and that are not alleged in the complaint. (Doc. 87 at 18-21).

For example, Bloomberg alleges, as a factual matter, that its "experimental AI model has no effect on the market for Plaintiffs' books"; that "BloombergGPT cannot displace a market for published books without being publicly available"; that Bloomberg's use of Plaintiffs' works was "circumscribed"; that BloombergGPT "would not displace Plaintiffs' works in the market"; that BloombergGPT and Plaintiffs "operate in totally different spaces"; that "BloombergGPT has done nothing to impact the primary market for Plaintiffs' works"; that "there is not one single person who has not bought the Plaintiffs' books because of Bloomberg's LLM research project"; and that

---

th[e] [motion to dismiss] stage." *Nicklen*, 551 F. Supp. 3d at 198. *Perfect 10* is distinguishable from this case for the same reasons it was distinguishable from the facts in *Nicklen*.

"the public benefit of Bloomberg's research efforts undeniably weighs in favor of a finding of fair use." (Doc. 87 at 18-21).

These kinds of unsupported factual assertions that do not appear in the complaint have no place in a 12(b)(6) analysis. Every case Bloomberg cites in its analysis of this factor confirms that: they were all resolved at summary judgment or after trial, on a full evidentiary record. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 16 (2021) (jury verdict after one-week trial); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1246 (11th Cir. 2014) (bench trial); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 607 (2d Cir. 2006) (summary judgment); *Blanch v. Koons*, 467 F.3d 244, 246 (2d Cir. 2006) (summary judgment); *Wilder*, 2024 WL 382141, at *1 (summary judgment).

The evidence presented on the fourth factor in those cases is also materially distinguishable from the allegations in the First Amended Complaint. For example, the plaintiff in *Blanch admitted* in discovery that the defendant's use "did not cause any harm to her career" or "any plans she had for [her photograph]." 467 F.3d at 258. The Plaintiffs have made no such admissions here. The analysis of the fourth fair use factor in *Patton* actually favors the Plaintiffs, not Bloomberg. The district court in that case considered evidence as to the "availability of digital permissions" of the plaintiffs' works alongside "evidence demonstrating … the actual harm to the value" of licenses and concluded, on balance, that "widespread conduct of the type engaged in by [the defendants] would cause substantial harm to the market for Plaintiffs' works," even though the specific conduct the defendants engaged in was not yet "widespread." 769 F.3d at 1280 & n.35. The Eleventh Circuit affirmed, holding this evidence suggested the "*threat* of market substitution [wa]s severe" and that the district court "should have afforded the fourth fair use factor *more* significant weight in its overall fair use analysis." *Id.* at 1283 (emphasis added). The Plaintiffs are entitled to obtain

and present the same type of evidence that was considered in *Patton* and ultimately established that the fourth factor weighed against fair use.[6]

Accepting as true the complaint's factual allegations—not Bloomberg's—the fourth factor weighs against a finding of fair use or, at a minimum, cannot conclusively be resolved in Bloomberg's favor on a motion to dismiss. The First Amended Complaint alleges that the Books3 dataset "now serve[s] as a baseline for all future LLM models" that Bloomberg may create. (Doc. 74 ¶ 58). It also alleges that Bloomberg cannot "simply agree to strip the Plaintiffs' copyright-protected works out of any future data sets," because they continue to benefit from their initial, unlawful infringement. (Doc. 74 ¶ 58). Simply put, the complaint alleges that Bloomberg surreptitiously obtained Plaintiffs' copyrighted intellectual property for the purpose of creating, establishing, and furthering its own commercial enterprise, which "cannot function without the expressive information extracted from the Infringed Works…." (Doc. 74 ¶ 77). Meanwhile, the "Plaintiffs have not been compensated for any of this. Their books were pirated, converted to plain text, and used" to develop Bloomberg's LLM without providing the Plaintiffs "the value for their work or licensing fees." (Doc. 74 ¶ 59).

Bloomberg attempts to argue the Plaintiffs' rights are unaffected by Bloomberg's original sin because its LLM does not compete with or serve as a market substitute for their works. But there is no basis for the Court to accept that conclusory assertion at this stage of the case. The Copyright Act grants an owner "certain 'exclusive rights,'" including the right to license the works. *See* 17 U.S.C. § 106(3). Bloomberg usurped those rights by creating a market for the illicit and

---

[6]     Bloomberg's reliance on the complaints in other "generative AI" cases is misplaced. (Doc. 87 at 21) (citing complaints in *The New York Times Co. v. Microsoft Co.*, No. 23-cv-11195 (S.D.N.Y.) and *Concord Music Grp., Inc. v. Anthropic PBC*, No. 23-cv-1092 (M.D. Tenn.)). The defendants in those cases did not move to dismiss the complaints based on fair use, so none of the courts in those cases have decided what allegations are required to survive dismissal.

complete access to the Plaintiffs' works vis-à-vis a shadow library. (Doc. 74 at ¶¶ 33, 48, 73, 77). Moreover, were this court to dismiss the complaint without a factual examination of Bloomberg's LLM and its intended uses—both now and in the future—Pandora's box would be opened. Bloomberg could use its LLM for any purpose, including creating works that compete with Plaintiffs' works and otherwise occupy the literary markets.

Through discovery, the Plaintiffs will establish that Bloomberg has substantially harmed the market for their works, including the well-developed market for licensing. *See Patton*, 769 F.3d at 1238 (fourth fair use factor favored plaintiffs and should have been afforded more significant weight based on evidence of potential harm to licensing market); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930-31 (2d Cir. 1994) (fourth factor favored authors of academic articles where defendant's photocopying of the copyrighted works deprived the authors of licensing fees to which they were otherwise entitled); *see also Harper & Row*, 471 U.S. at 568-69 (impact on potential licensing revenues is proper subject for consideration in assessing fourth factor). This factor—just like the other fair-use factors—cannot be resolved on a motion to dismiss.

## C. The First Amended Complaint sufficiently states a claim for copyright infringement, but if this Court disagrees, the Plaintiffs alternatively request leave to amend.

This case does not present the one circumstance in which a court may resolve fair use at the motion to dismiss stage. *See BWP Media*, 87 F. Supp. 3d at 505. That is reason alone to deny Bloomberg's motion. But even if this Court considers Bloomberg's fair use arguments, the allegations in the First Amended Complaint are sufficient, at the pleading stage, to avoid dismissal. Bloomberg has not come close to establishing fair use *as a matter of law*, before discovery has even begun. Bloomberg ultimately bears the burden of proof on that affirmative defense, and the Plaintiffs—like the plaintiffs in every case Bloomberg cites for the merits of its fair use arguments—are entitled to discovery to test that defense.

If this Court disagrees, however, and concludes the complaint is deficient as to the fair use factors, the Plaintiffs alternatively request leave to amend to address any deficiencies the Court identifies. Bloomberg summarily argues that such amendment would be futile based on some "fundamental infirmity" in the complaint. (Doc. 87 at 23). But it does not identify what that infirmity it is, let alone explain how amendment would be futile.[7]

Bloomberg also fails to identify any prejudice or bad faith. It cites to several inapposite cases in which parties failed to remedy threshold, jurisdictional deficiencies that had previously been brought to their attention, a repeated failure to comply with Rule 9(b), or an untimely request for leave. *See Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 436 (S.D.N.Y. 2023) (plaintiff failed to cure deficiencies including lack of jurisdictional nexus to forum, lack of required pre-suit notice, and impermissible duplicative pleading); *United States ex rel. Levine v. Vascular Access Ctrs., L.P.*, No. 12-cv-5103, 2020 WL 5534670, at *8 (S.D.N.Y. Sept. 15, 2020) (plaintiff failed to cure 9(b) deficiencies, citing cases for a particular rule in that context); *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (party did not request leave to amend until after judgment was filed, after having had two previous opportunities to amend).

When it comes to the merits of a copyright claim, however, Bloomberg's own cited cases reveal that amendment is regularly granted. *See, e.g.*, *Bespaq Corp.*, 2005 WL 14841 at *4 (dismissal "with leave to amend"). Indeed, that is the "[r]ule" in this Circuit, in the absence of any arguments of prejudice or bad faith. *See Pasternack*, 863 F.3d at 174. Bloomberg has made none here.

---

[7]    Bloomberg cites *Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362 (S.D.N.Y. 2017), for this point, but the "fundamental infirmity" in that case was on the narrow question of "substantial similarity," which is not at issue here. *Id.* at 371.

## **CONCLUSION**

This Court should deny the motion to dismiss. Alternatively, it should grant leave to amend.

Dated: April 19, 2024                                          Respectfully submitted,


                                                                         */s/ Greg G. Gutzler*_____

Seth Haines                                                      Greg G. Gutzler
Timothy Hutchinson                                        **DICELLO LEVITT LLP**
Lisa Geary                                                         485 Lexington Ave., 10th Floor
*Admitted Pro Hac Vice*                                New York, NY 10017
**RMP, LLP**                                                    Telephone: (646) 933-1000
5519 Hackett St., Ste. 300                             Facsimile: (646) 494-9648
Springdale, AR 72762                                    ggutzler@dicellolevitt.com
Tel: (479) 443-2705
shaines@rmp.law
thutchinson@rmp.law                                    Amy E. Keller
lgeary@rmp.law                                            Adam J. Levitt
                                                                         James A. Ulwick
                                                                         *Admitted Pro Hac Vice*
Scott Poynter                                                   **DICELLO LEVITT LLP**
*Pro Hac Vice* application forthcoming      10 North Dearborn St., 6th Floor
**POYNTER LAW GROUP**                       Chicago, IL 60602
4924 Kavanaugh Blvd.                                  Tel. (312) 214-7900
Little Rock, AR 72207                                    alevitt@dicellolevitt.com
Tel: (501) 812-3943                                       akeller@dicellolevitt.com
scott@poynterlawgroup.com                       julwick@dicellolevitt.com


                                                                         *Counsel for Plaintiffs*

22

## CERTIFICATE OF FILING

I hereby certify that I filed the foregoing using this Court's CM/ECF service, which will send notification of such filing to all counsel of record this 19th day of April 2024.

*/s/ Greg G. Gutzler*
Greg G. Gutzler