UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIKE HUCKABEE, RELEVATE GROUP,
DAVID KINNAMAN, TSH OXENREIDER,
LYSA TERKEURST, and JOHN BLASE
on behalf of themselves and all others
similarly situated,

　　　　　　　　　　　　　Plaintiffs,

　　　　　　- against -

META PLATFORMS, INC., BLOOMBERG
L.P., BLOOMBERG FINANCE, L.P.,
MICROSOFT CORPORATION, and
THE ELEUTHERAI INSTITUTE,

　　　　　　　　　　　　　Defendants.

Case No. 23-cv-09152-MMG

**ORAL ARGUMENT
REQUESTED**

---

**BLOOMBERG L.P. AND BLOOMBERG FINANCE L.P.'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENTS IN REPLY .................................................................................. 1

    A.   Plaintiffs Get the Legal Standards Wrong ................................................ 1

        1.   Plaintiffs Misstate the Pleading Standard ..................................... 1

        2.   Plaintiffs Misstate When Dismissal Is Appropriate Based on Fair Use ............... 2

    B.   Plaintiffs Fail to Plausibly State a Claim for Which Relief Can Be Granted ................ 4

        1.   Plaintiffs Fail to Adequately Plead the "What" or "How" ................... 4

        2.   Plaintiffs Cannot Overcome Fair Use ........................................... 5

    C.   Neither Discovery Nor Amendment Is the Answer ..................................... 9

III.   CONCLUSION .................................................................................................. 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,
  60 F.3d 913 (2d Cir. 1994)..................................................................................8

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015)................................................................................7

*Authors Guild, Inc. v. HathiTrust*,
  755 F.3d 87 (2d Cir. 2014)..........................................................................6, 7, 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006)................................................................................8

*Binno v. Am. Bar Ass'n*,
  826 F.3d 338 (6th Cir. 2016) ..............................................................................1

*Bohnet v. Valley Stream Union Free School Dist. 13*,
  594 F. App'x 53 (2d Cir. 2015) ..........................................................................1

*Brown v. Netflix, Inc.*,
  462 F. Supp. 3d 453 (S.D.N.Y. 2020)................................................................8

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ..............................................................................3

*BWP Media Inc. v. Gossip Cop Media, LLC*,
  87 F. Supp. 3d 499 (S.D.N.Y. 2015)...............................................................2, 3

*Cambridge Univ. Press v. Patton*,
  769 F.3d 1232 (11th Cir. 2014) ..........................................................................8

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013)............................................................................2, 3

*Cole v. John Wiley & Sons, Inc.*,
  No. 11-cv-2090, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012)..........................4

*Cosmas v. Hasset*,
  886 F.2d 8 (2d Cir. 1989)....................................................................................4

*DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH & Co Tankschiff KG v.
  Essar Capital Ams. Inc.*,
  882 F.3d 44 (2d Cir. 2018).................................................................................1

*Grant v. Trump*,
   563 F. Supp. 3d 278 (S.D.N.Y. 2021)..............................................................................3

*Harper & Row Pubs., Inc. v. Nation Enters.*,
   471 U.S. 539 (1985).........................................................................................................9

*Hunley v. Buzzfeed, Inc.*,
   No. 20-cv-08844, 2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021) ...........................3

*Jacobs v. Carnival Corp.*,
   No. 06-cv-0606, 2009 WL 856637 (S.D.N.Y. Mar. 25, 2009)..................................9

*KBL Corp. v. Arnouts*,
   646 F. Supp. 2d 335 (S.D.N.Y. 2009)...........................................................................10

*Kelley v. Morning Bee, Inc.*,
   No. 21-cv-8420, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) ........................3, 10

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992) ...................................................................................2

*Kelly-Brown v. Winfrey*,
   717 F.3d 295 (2d Cir. 2013)......................................................................................2, 3

*Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic*,
   No. 97-cv-9248, 1999 WL 816163 (S.D.N.Y. Oct. 13, 1999)..............................2, 5

*Lopez v. Bonanza.com, Inc.*,
   No. 17-cv-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ...............................5

*Marano v. Metro. Museum of Art*,
   472 F. Supp. 3d 76 (S.D.N.Y. 2020)............................................................................3

*Neitzke v. Williams*,
   490 U.S. 319 (1989).......................................................................................................10

*Palmer Kane LLC v. Scholastic Corp.*,
   No. 12-cv-3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ...................................4

*Plunket v. Doyle*,
   No. 99-cv-11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) .................................4

*Podany v. Robertson Stephens, Inc.*,
   350 F. Supp. 2d 375 (S.D.N.Y. 2004)..........................................................................10

*Salem v. New York University*,
   No. 22-cv-5112, 2023 WL 8438713 (S.D.N.Y. Sept. 15, 2023) ...............................10

*Schwartzwald v. Oath Inc.*,
  No. 19-cv-9938, 2020 WL 5441291 (S.D.N.Y. Sept. 10, 2020) ...............................................3

*Shady Recs., Inc., v. Source Enters. Inc.*,
  371 F. Supp. 2d 394 (S.D.N.Y. 2005).....................................................................................6, 9

*TCA Television Corp. v. McCollum*,
  839 F.3d 168 (2d Cir. 2016)........................................................................................................3

*TechnoMarine SA v. Giftports, Inc.*,
  758 F.3d 493 (2d Cir. 2014)......................................................................................................10

*Wilder v. Hoiland*,
  No. 22-cv-1254, 2024 WL 382141 (S.D.N.Y. Feb. 1, 2024) ....................................................7

*Yamashita v. Scholastic, Inc.*,
  No. 16-cv-9201, 2017 WL 74738 (S.D.N.Y. Jan. 5, 2017) ......................................................9

*Yang v. Mic Network, Inc.*,
  405 F. Supp. 3d 537 (S.D.N.Y. 2019).....................................................................................2, 8

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
  751 F.2d 555 (2d Cir. 1985)........................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................................9

## I.      INTRODUCTION

No amount of discovery, litigation, or repleading will ever make a non-commercial, internal AI research project a novel or a market substitute for Plaintiffs' novels.  Plaintiffs' deficient pleadings do not plausibly suggest otherwise.  This is not surprising, as Plaintiffs' original complaint was focused on the activities of different parties—Meta and Microsoft—and a different, public, commercial AI model—Llama.  (Dkt. No. 1 ¶¶ 49–62.)  Bloomberg and BloombergGPT received only passing reference, because as Plaintiffs have consistently acknowledged, Bloomberg is different.  Bloomberg simply "released a research paper."  (Am. Compl. ¶ 45.)

Plaintiffs should not be permitted to prolong this case by failing (repeatedly) to plead more than a handful of conclusory allegations that are insufficient to state a plausible claim for copyright infringement, especially in view of Bloomberg's straightforward fair use defense.  This Court has already instructed Plaintiffs to amend their complaint once.  (Dkt. No. 73.)  But rather than add specificity, Plaintiffs chose to remove content.  (Dkt. No. 75-1 (redline).)  Plaintiffs should not be given a ***third*** bite at the apple.  The Amended Complaint should be dismissed with prejudice.

## II.      ARGUMENTS IN REPLY

### A.      Plaintiffs Get the Legal Standards Wrong

#### 1.      Plaintiffs Misstate the Pleading Standard

Plaintiffs argue that they "have pleaded sufficient facts to put Bloomberg on notice as to the nature of their plausible claims—they are required to do no more."  (Opp. at 7.)  But it is not sufficient to plead merely the ***nature*** of the claims asserted.  Rather, Plaintiffs must "allege facts with ***sufficient specificity*** to state a claim for relief that is plausible on its face." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345 (6th Cir. 2016); *see also DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH & Co Tankschiff KG v. Essar Capital Ams. Inc.*, 882 F.3d 44, 50 (2d Cir. 2018) (facts alleged must provide "sufficient specificity" "[i]n order to render [Plaintiffs' allegations] plausible"); *Bohnet v.*

*Valley Stream Union Free School Dist. 13*, 594 F. App'x 53, 54 (2d Cir. 2015) ("A plaintiff must allege sufficient facts to state a claim of relief that is 'plausible on its face'").  In the context of a copyright infringement claim, this requires that plaintiffs sufficiently allege both **what** was copied and **how** it was copied.  *See Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic*, No. 97-cv-9248, 1999 WL 816163, at *3 (S.D.N.Y. Oct. 13, 1999); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992).  Plaintiffs do not sufficiently allege either, as explained further below.

### 2.   Plaintiffs Misstate When Dismissal Is Appropriate Based on Fair Use

Plaintiffs argue that dismissal on fair use grounds would be an "extreme measure."  (Opp. at 8.)  Plaintiffs assert that "the only circumstance in which it may be appropriate to consider fair use on a motion to dismiss is where 'the only two pieces of evidence needed to decide the question of fair use … are the original version and the allegedly infringing work.'"  (Opp. at 8.)  And Plaintiffs argue that it is **never** appropriate to evaluate fair use at the motion to dismiss stage unless the court can conduct "a simple side-by-side comparison."[1]  (Opp. at 10.)  Plaintiffs are incorrect.

Plaintiffs cite three district court decisions for their narrow proposition.  But these decisions ultimately rely on Second Circuit precedent supporting the broader proposition that a copyright infringement claim may appropriately be dismissed on fair use grounds where the facts are evident on the face of the complaint.  Specifically, *BWP Media* and *Yang* both cite to *Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013), and *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013).  *See BWP Media Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019).  Far from the narrow rule Plaintiffs suggest, *Kelly-Brown* explained that "[a]ffirmative defenses may be adjudicated at [the motion to

---

[1]      Of course, a simple side-by-side comparison of BloombergGPT and *God, Guns, Grits and Gravy* could leave no doubt that one is an AI model and the other is a novel, the former a highly transformative use of whatever content it allegedly referenced from the latter.

dismiss stage], however, where the facts necessary to establish the defense are evident on the face of the complaint." 717 F.3d at 308 (2d Cir. 2013).[2] And in *Cariou* the court referenced with approval "the Seventh Circuit's recent decision in *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012)," in which "the court rejected the appellant's argument that copyright infringement claims cannot be disposed of at the motion-to-dismiss stage." 714 F.3d at 707. Meanwhile, *TCA Television Corp. v. McCollum*, to which Plaintiffs cite (Opp. at 8), confirms that dismissal based on a fair use defense is appropriate where the defense is "so clearly established on the face of the [complaint] … as to support dismissal." 839 F.3d 168, 178 (2d Cir. 2016).

As explained in Bloomberg's Motion, courts routinely dismiss copyright infringement complaints on fair use grounds. (Mot. at 9.)[3] Indeed, even where courts determine that dismissal is inappropriate, they consistently do so only after considering the fair use factors in the context of the allegations pleaded. *E.g.*, *Grant v. Trump*, 563 F. Supp. 3d 278, 289 (S.D.N.Y. 2021) ("The Court has applied the foregoing fair use factors in light of the purposes of copyright … and finds that each factor favors the plaintiffs at this stage."); *TCA Television Corp. v. McCollum*, 839 F.3d 168, 187 (2d Cir. 2016) ("In sum, on the 12(b)(6) record, all four statutory factors weigh in favor of plaintiffs and against a defense of fair use.").[4] Consideration of fair use is thus far from extreme.

---

[2]     The *Kelly-Brown* court made this holding in the context of a trademark claim, not a copyright claim. The decision is, however, frequently cited in copyright decisions like *BWP Media* on which Plaintiffs' rely. 87 F. Supp. 3d at 505; *see also Schwartzwald v. Oath Inc.*, No. 19-cv-9938, 2020 WL 5441291, at *3 (S.D.N.Y. Sept. 10, 2020).

[3]     *See also Marano v. Metro. Museum of Art*, 472 F. Supp. 3d 76, 88 (S.D.N.Y. 2020), *aff'd*, 844 F. App'x 436 (2d Cir. 2021); *Kelley v. Morning Bee, Inc.*, No. 21-cv-8420, 2023 WL 6276690, at *15–16 (S.D.N.Y. Sept. 26, 2023); *Schwartzwald*, 2020 WL 5441291, at *9.

[4]     In only one case Plaintiffs cite did a court decline to undertake such an analysis, explaining that "[t]he first factor … weighs against fair use" and that "[b]ecause [defendant] failed to address the other three mandatory factors, it cannot sustain a fair use defense." *Hunley v. Buzzfeed, Inc.*, No. 20-cv-08844, 2021 WL 4482101, at *3–4 (S.D.N.Y. Sept. 30, 2021) (*see* Opp. at 10).

**B.** **Plaintiffs Fail to Plausibly State a Claim for Which Relief Can Be Granted**

**1.** **Plaintiffs Fail to Adequately Plead the "What" or "How"**

*First*, the Amended Complaint fails to allege which of Plaintiffs' copyrighted works were allegedly copied—i.e., the "*what*" of a copyright infringement claim.  Now, Plaintiffs argue that "[t]he inference that [their] works were included in the Books3 dataset … is precisely the kind of inference the Court is required to draw in Plaintiffs' favor."  (Opp. at 4.)  But the Court's ability to draw reasonable inferences does not overcome Plaintiffs' obligation to adequately plead their claims.  "Courts have repeatedly rejected the use of … conclusory and vague allegations … as a substitute for allegations that *specify the original works* that are the subject of a copyright claim." *Cole v. John Wiley & Sons, Inc.*, No. 11-cv-2090, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012); *see also Plunket v. Doyle*, No. 99-cv-11006, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) ("The Court finds that plaintiff fails to specify which works are at issue in this case.").[5]

*Second*, and particularly stymieing in view of Bloomberg's fair use defense, Plaintiffs fail to plead "*how*" Bloomberg has allegedly infringed upon their copyrights.  Plaintiffs point simply to their conclusory allegation that "Bloomberg 'created, copied, maintained and/or utilized the Books3 dataset.'"  (Opp. at 5.)  But Plaintiffs do not point to any allegation (there is none) regarding *how* Bloomberg allegedly used their works, or to what end.  Plaintiffs' allegations are simply too generic to adequately allege copyright infringement.  *See Palmer Kane LLC v. Scholastic Corp.*, No. 12-cv-3890, 2013 WL 709276, at *2–4 (S.D.N.Y. Feb. 27, 2013) (dismissing complaint that included non-exhaustive list of copyrighted works defendants allegedly copied, explaining that "***the complaint needs to contain some factual allegations to narrow the infringing***

---

[5]     Plaintiffs' cited authority (Opp. at 3–4) stands only for the general proposition that allegations should be construed in the light most favorable to plaintiffs.  *E.g.*, *Cosmas v. Hasset*, 886 F.2d 8, 12 (2d Cir. 1989); *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985).

4

*acts beyond broad conclusory statements of infringement*").[6]

Ultimately, recognizing the paucity of their Bloomberg-specific pleadings, Plaintiffs rely on allegations regarding "LLMs *like* BloombergGPT" (Opp. at 11–12 (citing to Am. Compl. ¶¶ 29–30)), developed by "[c]orporations *like* the Defendant[]" (Am. Compl. ¶ 29).  But allegations about *other* LLMs (e.g., ChatGPT) or ***non-parties*** (e.g., OpenAI) do not render Plaintiffs' claim against ***Bloomberg*** plausible.

### 2.  Plaintiffs Cannot Overcome Fair Use

#### (a)  *Plaintiffs Do Not Allege that BloombergGPT Was Anything Other than a Non-Commercial, Internal Research Project*

Plaintiffs argue that their "allegations say nothing about the purpose of Bloomberg's infringement." (Opp at 11.)  But Plaintiffs cannot rely on their failure to adequately plead ***how*** Bloomberg allegedly infringed their copyrights to avoid an inevitable finding of fair use.  At this stage, we must look at what Plaintiffs alleged and consider what Plaintiffs argue.

As an initial matter, it is significant that this case is unlike other cases in which other AI models have been in the spotlight for alleged copyright infringement.  Here, unlike other AI-related complaints, there is no allegation that BloombergGPT has been made available to the public, that it has been put to commercial use, or that it generates content that is similar (much less substantially similar) to Plaintiffs' novels.  These are important distinctions, because they go to the core of Plaintiffs' claims.  While Plaintiffs argue that the complaints in other cases are irrelevant (Opp. at

---

[6]    Plaintiffs' attempts to distinguish *Lopez v. Bonanza.com, Inc.*, No. 17-cv-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019), and *Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic*, No. 97-cv-9248, 1999 WL 816163 (S.D.N.Y. Oct. 13, 1999), fail.  In *Lopez*, the court recognized that a *pro se* plaintiff should be afforded greater lenience, but dismissed the complaint nonetheless, because it failed to plead the "particular infringing acts" at issue with the requisite specificity. 2019 WL 5199431, at *23.   And while the court in *Lindsay* dismissed only one of several infringement claims, Plaintiffs' allegations here are more akin to the "[b]road, sweeping allegations of infringement," 1999 WL 816163, at *4, in the claim that was dismissed.  *Id.*

19 n.6), this Court should appreciate that they highlight the inadequacies of the allegations here.

Plaintiffs argue that their Amended Complaint "does not allege that the purpose of Bloomberg's use was … research …." (Opp. at 11.)  But Plaintiffs necessarily acknowledge their allegation that "BloombergGPT was the product of Bloomberg's 'research' into the viability of new LLMs." (Opp. at 11 (citing Am. Compl. ¶¶ 44–45).)  Such an allegation surely does not lead to any plausible inference other than that Bloomberg's alleged use was for the purposes of research.

Plaintiffs argue that Bloomberg used their works "to create the company's own LLM," to "aid[] in content **creation**." (Opp. at 11.)  But Plaintiffs do not explain how such allegations lead to any plausible inference other than that BloombergGPT is a highly transformative use.

Plaintiffs argue, without explanation, that Bloomberg's cited authority is inapposite, (*id.* at 15), but a review of the courts' decisions in *Google Books*, *HathiTrust* and *iParadigms* readily confirms that technological uses of literary works have been found to be highly transformative, even where (unlike here) they involve the dissemination of copies of portions of the original works.

And while the Amended Complaint includes vague allegations of profit, Plaintiffs do not dispute that they did not allege BloombergGPT has been made publicly available or has any other commercial use.[7]  To the contrary, Plaintiffs acknowledge the possibility (in fact, the truth) "that BloombergGPT has not yet been released." (Opp. at 14.)  And Plaintiffs appear to acknowledge that they do not have information or belief sufficient to allege whether "Bloomberg has … reaped

---

[7]      To the extent Plaintiffs attempt to rely on allegations regarding **future** versions of BloombergGPT, such allegations are wholly speculative and need not be credited.  *Shady Recs., Inc., v. Source Enters. Inc.*, 371 F. Supp. 2d 394, 397 (S.D.N.Y. 2005) ("It would, indeed, be highly inappropriate for this Court … to issue an advisory opinion about any particular hypothetical use of the material in the future …."); *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104–05 (2d Cir. 2014) (rejecting argument that "any iteration of [the relevant project] … is an infringement of copyright," holding that claims regarding project were not ripe because "the record contained no information about …what [the project] would look like or whom it would affect").

revenues and profits from … BloombergGPT" (Opp. 14) and that they may be (in fact, will be) "unable to prove direct profits or revenue" (*id.*).

In sum, it is clear from the face of the Amended Complaint that Bloomberg's research resulting in an initial, non-commercial, internal model of BloombergGPT is not qualitatively different from the "educational, non-commercial purpose" of the defendant's presentation the court determined was transformative and "weigh[ed] heavily in favor of fair use" in *Wilder v. Hoiland*, No. 22-cv-1254, 2024 WL 382141, at *17 (S.D.N.Y. Feb. 1, 2024).

(b)    *The Second Factor Favors Transformative Uses*

Plaintiffs claim that "[t]here is no question the nature of the copyrighted works favors Plaintiffs," because their works "come[] close to the core of creative expression."  (Opp. at 16.) But whether a work is factual or fictional should not "influenc[e] [the Court] one way or the other with respect to the second factor considered in isolation." *Google Books*, 804 F.3d 202, 220 (2d Cir. 2015).  And in any event, the second factor "has rarely played a significant role in the determination of a fair use dispute," and here, as in *Google Books*, the factor favors Bloomberg because the "nature" of Plaintiffs' works is swallowed by the "purpose and character" of BloombergGPT to support a finding that Bloomberg's "use" is transformative.  *Id.*

(c)    *Full-Text Copying Is Not Inconsistent with Fair Use*

Plaintiffs argue that their allegation that Bloomberg copied the "full text" of their works is "enough to establish, at the pleading stage, that the third fair use factor weighs in Plaintiffs' favor." (Opp. at 16.)   But the Second Circuit has made clear that full-text copying, in certain circumstances, ***is entirely consistent with fair use.***  *See, e.g.*, *HathiTrust*, 755 F.3d 87, 98–99. Courts evaluate "whether the copying used more of the copyrighted work than necessary," *id.* at 98, and "the amount and substantiality of [the original work that] is thereby made accessible to a public for which it may serve as a competing substitute," *Google Books*, 804 F.3d at 222.  Here,

Plaintiffs allege that "vast" datasets are "***necessary*** to effectively train LLMs" (Am. Compl. ¶ 32), so that LLMs can learn "grammar, vocabulary, context, and various language patterns" (*Id.* ¶ 27). And Plaintiffs do not allege that Bloomberg has made ***any*** portion of their works accessible to the public, much less as a "competing substitute."

        (d)    *Plaintiffs Cannot Show How a Research Project Affects Their Book Sales*

Plaintiffs contend that Bloomberg's argument that BloombergGPT has no effect on the market for Plaintiffs' books relies on "unsupported factual assertions that do not appear in the complaint and have no place in a 12(b)(6) analysis." (Opp. at 18.) But courts routinely assess potential market substitution simply by considering the context of the original and allegedly infringing works, informed by the pleadings. *See, e.g.*, *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 464 (S.D.N.Y. 2020) ("[I]t is unlikely that parents would purchase copies of the film for their minor children so that they could hear the excerpt of the Song in the Film."); *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) ("[E]ven assuming there were a market in licensing the Photograph and drawing all available inferences in Plaintiff's favor, it is implausible that such a market would be supplanted by Defendant's use.").

Plaintiffs point to their vague allegations that Bloomberg used their books to train BloombergGPT without compensating Plaintiffs. But those allegations have nothing to do with harm to the market for Plaintiffs' works, and controlling authority makes clear that Plaintiffs may not rely on a licensing market for transformative use to demonstrate market harm. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614–15 (2d Cir. 2006).[8]

---

[8]    Plaintiffs' cited cases are inapposite. *See Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1275 (11th Cir. 2014) (noting that "Defendants' use is nontransformative and fulfills the educational purposes that Plaintiffs, at least in part, market their works for"); *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 931 (2d Cir. 1994) (market factor weighed against fair use finding where defendant photocopied and used plaintiff's scientific articles to aid in defendant's

Finally, Plaintiffs, incredibly, claim that "Bloomberg usurped [their] rights by creating a market for the illicit and complete access to the Plaintiffs' works vis-à-vis a shadow library." (Opp. at 19–20.) **But the Amended Complaint alleges no such thing.** Nor could it plausibly allege such a thing, given that Plaintiffs do not allege that Bloomberg ever released or published BloombergGPT to the public or to any third party.[9]

### C.    Neither Discovery Nor Amendment Is the Answer

Recognizing the insufficiency of their already-amended allegations, Plaintiffs refer frequently in their opposition to speculation regarding what discovery might yield and otherwise beg for yet another chance to amend. But neither discovery nor repleading is the answer.

It is well-settled that where a complaint "contains so few factual allegations it is nothing more than a fishing expedition," "such aimless trawling" is not permitted. *Yamashita v. Scholastic, Inc.*, No. 16-cv-9201, 2017 WL 74738, at *1–2 (S.D.N.Y. Jan. 5, 2017), *aff'd*, 936 F.3d 98 (2d Cir. 2017) (granting motion to dismiss copyright infringement claim where "the complaint does not plead sufficient facts to support its claims beyond mere speculation"); *see also Jacobs v. Carnival Corp.*, No. 06-cv-0606, 2009 WL 856637, at *6 (S.D.N.Y. Mar. 25, 2009) ("Plaintiffs attempt to cast an infinite net over Defendants that encompasses every theatrical work ever made and copyrighted, hoping to catch Defendants somewhere within it. This is the epitome of the fishing expedition dreaded in discovery, launched prematurely in the Complaint."). "Allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to 'streamline[ ] litigation by dispensing with

---

scientific research); *Harper & Row Pubs., Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985) (fair uses do not "adversely affects the value of any of the rights in the copyrighted work").

[9]    Again, the Court should reject Plaintiffs' invitation to consider "future" iterations of BloombergGPT, allegations regarding which are entirely speculative and therefore implausible. *Shady Recs., Inc.*, 371 F. Supp. 2d at 397 (S.D.N.Y. 2005); *HathiTrust*, 755 F.3d at 104–05.

needless discovery and factfinding' where the plaintiff has failed to state a claim under the law." *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)); *see also Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) ("discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, ***not in order to permit a plaintiff to find out whether he has such a claim.***").

And while Plaintiffs offer that they "can easily resolve [this] issue through amendment" (Opp. at 5), they never explain what they would further plead if given the opportunity and conveniently ignore that they have already taken such an opportunity and added nothing. Leave to amend is properly denied where a plaintiff fails to correct deficiencies despite having an opportunity to amend. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (affirming dismissal of complaint with prejudice where "Plaintiff already amended its complaint once following Defendant's first motion to dismiss for failure to state a claim," "failed to resolve its pleading deficiencies in its First Amended Complaint," and "entirely failed to specify how it could cure its pleading deficiencies."); *Salem v. New York University*, No. 22-cv-5112, 2023 WL 8438713, at *9 (S.D.N.Y. Sept. 15, 2023), *report and recommendation adopted*, 2023 WL 8253026 (S.D.N.Y. Nov. 29, 2023) (collecting cases, and dismissing complaint with prejudice where plaintiff "already had an opportunity to amend to address the pleading deficiencies highlighted in [the court's previous order]"). Moreover, as explained above, Plaintiffs' Amended Complaint does not (and cannot) remedy the reality that the fair use doctrine precludes Plaintiffs' copyright claim, "because the works are what they are." *Kelley*, 2023 WL 6276690, at *16. Nor will a third bite at the apple. Amendment, therefore, would be futile.

## III.   CONCLUSION

Plaintiffs' First Amended Complaint should be dismissed with prejudice.

DATED:  May 3, 2024

Respectfully submitted,

FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP

By:  */s/ Nicole M. Jantzi*
       Nicole M. Jantzi
       (nicole.jantzi@friedfrank.com)
       Paul M. Schoenhard (*Pro Hac Vice*)
       (paul.schoenhard@friedfrank.com)
       FRIED, FRANK, HARRIS, SHRIVER
         & JACOBSON LLP
       801 17th Street NW
       Washington, DC 20006
       Telephone: (202) 639-7265

       Amir R. Ghavi
       (amir.ghavi@friedfrank.com)
       FRIED, FRANK, HARRIS, SHRIVER
         & JACOBSON LLP
       One New York Plaza
       New York, New York 10004
       Telephone: (212) 859-8000

       *Attorneys for Defendants Bloomberg L.P.*
       *and Bloomberg Finance L.P.*