UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| MIKE HUCKABEE, RELEVATE GROUP, DAVID KINNAMAN, TSH OXENREIDER, LYSA TERKEURST, and JOHN BLASE *on behalf of themselves and all others similarly situated,*<br><br>    Plaintiffs,<br><br>    v.<br><br>BLOOMBERG L.P., and BLOOMBERG FINANCE, L.P.,<br><br>    Defendants. |

Case No. 1:23-cv-09152-MMG

**ESI PROTOCOL AND [PROPOSED] ORDER**

This Order regarding the Production of Documents, Electronically Stored Information and Paper Documents ("ESI Protocol" or "Protocol") shall govern the production of documents and electronically stored information ("ESI") by the parties and their counsel of record (collectively, the "Parties") in the above captioned litigation (the "Matter").

## I.    ESI DISCLOSURES

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

**A.    Custodians.** The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, the type of the information under the custodian's control, and custodial sources (e.g., personal computers, laptop computers, email, calendars, mobile devices, shared network storage or folders, structured data systems).

**B.    Non-custodial Data Sources.** A list of non-custodial data sources (e.g., departmental files, shared drives, multi-user messaging platforms (or "chat" platforms), such as

1

Slack or Microsoft Teams; cloud storage accounts; online repositories, social media accounts of the Party, intranets, and databases), if any, likely to contain discoverable ESI.

C.    **Third-Party Data Sources.** A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

D.    **Inaccessible Data.** A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B) as well as a list of the data sources among those listed here that the parties agree not to preserve.

## II.    GENERAL PROVISIONS

A.    **Applicability.** The production specifications in this Order apply to documents that are produced in the first instance in the Matter. In the event of transfer to other courts, this Order will remain in effect in all respects, until adopted by the transferee court or replaced by a successor order. The terms and specifications of this Order shall only apply to productions made after the date of entry of this Order. Productions served in the Matter that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree in writing.

B.    **Modification.** The Parties may, by written agreement, modify the procedures set forth in this Protocol to address new or evolving technology, data formats, platforms, or other issues that arise during the course of discovery.

C.   **ESI Liaison Counsel.**

1.   Within 14 days of entry of this Protocol, each Party shall designate an ESI Liaison and notify all other Parties of such designation in writing. A Party may change its ESI Liaison designation by providing written notice to all other Parties.

2.   Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible). All ESI Liaisons shall be included on all correspondence relating to document productions.

D.   **Deadlines.** All schedules and deadlines referenced in this Protocol shall be computed in accordance with Fed. R. Civ. P. 6.

E.   **Definitions.**

1.   "Discovery Material" is defined as all information produced, given, or exchanged by and among all Parties, or received from non-Parties in the Litigation, including all deposition testimony, testimony given at hearings or other proceedings, interrogatory answers, documents and all other discovery materials, whether produced informally or in response to requests for discovery.

2.   "Party" means Plaintiffs and Defendants in this Litigation.

3.   "Requesting Party" means the Party requesting production of documents.

4.   "Producing Party" means the Party that may be producing documents in response to the request of Requesting Party.

**F.**      **Confidential Information.** Nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under a protective order entered by the Court.

**G.**      **Encryption.** To maximize the security of information in transit, any media on which the documents are produced may be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media. The Producing Party shall promptly notify the Receiving Party if any media containing produced information is lost, stolen, or compromised, and shall cooperate in good faith to mitigate any potential harm.

**H.**      **Rolling Productions.** Documents that have been identified by a Party for production shall be produced at reasonably expedient intervals.

**I.**      **Training Data and Source Code.**  This ESI Protocol does not govern the preservation or production of training data or source code in this matter. A separate protocol will be entered to address training data and source code.

## III.    SCOPE OF DISCOVERY

**A.**      **Scope in General.** Pursuant to F.R.C.P. 26(b)(1), the Parties may obtain discovery regarding any nonprivileged matter that is relevant to any Party's claim or defense, subject to the provisions of this Section and Rule 26(b)(1).

**B.**      **Preservation.** Nothing in this Order shall alter the preservation duties imposed by the Federal Rules of Civil Procedure or applicable law, order of the Court, or any agreement(s) reached by the Parties. Should either Party seek specific relief from a preservation obligation, they shall make a specific request of the other Party in writing. The request shall contain a description of the data at issue, the date range the data covers, the basis of the specific request, and a description

of other sources containing identical or substantially equivalent data, if known. The Party receiving the request shall exercise good faith in reviewing the request. If the Parties cannot agree, the issue may be presented to the Court.

C.      **Archival/Backup Copies.**  If a Party learns that potentially relevant and non-duplicative documents or information have been destroyed per a document retention policy, but that an archival/backup location contains an archival/backup copy of such documents, the Party will disclose the existence of this archival/backup data, regardless of whether such a location has been declared or deemed inaccessible. The Parties agree to meet and confer about this archival/backup location to determine whether good cause exists to restore and collect this data.

D.      **Documents Produced in Other Matters.**  To the extent any Party is required or agrees to produce documents in the Matter that originally were collected or produced in other cases or government investigations, such documents shall be identified and produced to the extent possible in accordance with the production format described herein. Such documents will bear the original Bates Numbers assigned to them in those other proceedings and the bates-stamp required in this Matter. Such documents shall be produced with the original metadata preserved. If the original metadata is incomplete, inaccurate, or otherwise deficient, the Producing Party shall supplement or substitute metadata fields with information derived from the current litigation's production process to the extent reasonably available, while maintaining the integrity of the original metadata where possible.

E.      **Third Party Subpoenas and the Processing of Non-Party Documents.**  A Requesting Party issuing a non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and request that the non-Party produce documents in accordance with the specifications of this Order relating to form of production. The Issuing Party shall timely produce

5

to all other Parties any productions obtained from a non-Party in the same form in which the document(s) was/were produced by the non-Party. Such non-Party productions should be served by the Issuing Party to all other Parties within 14 calendar days of the non-Party's production to the Issuing Party.  If any such non-Party productions are not Bates Numbered by the non-Party producer, prior to any Party reproducing the non-Party documents, the Issuing Party will Bates-label the documents or ESI before producing a copy to the other parties if the produced documents or ESI are of the type so requiring consistent with other provisions of this Order. For the avoidance of doubt, nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties to object to a subpoena.

## IV.    GENERAL PRODUCTION FORMAT PROTOCOLS

A.    **Appendices.**  Appendices A and B contain the technical specifications for the production of documents.  If there is any conflict between the body of this document and the Appendices, the text of the body of this document shall control.

B.    **Forms of Production.**

1.    **File Types and Format.**

a.    Except as otherwise provided in this Order, all documents existing in electronic format (e.g., Word, PDF, PowerPoint, webpage files, Slack, Teams, Google Chat, Emails, etc.) shall be produced as TIFFs, provided that any comments, annotations, notes, revisions, tracked changes, speaker notes, hidden slides, and any other hidden text or hidden content are preserved and visible. If no redactions are applied and a file contains any such material that is not preserved or visible when produced in TIFF file format, it shall instead be

produced in native format with a TIFF placeholder image to ensure those items are fully accessible.

b.    All spreadsheet (e.g., Microsoft Excel, Corel Quattro, etc.) files, and Multimedia (e.g., video, audio, voicemail, etc.) files shall be produced as native files unless they require redaction. Single-page Bates-stamped TIFF image slip sheets will display the Bates number of the native file, the Confidentiality designations, and "File Produced Natively" for each document produced in native format.

c.    The Parties will meet and confer on the production of other file types, including, but not limited to, materials and prototypes testing, data from messaging applications (e.g., Teams, Slack, Google Chat, et al.), CRM or ERP platforms, (SAP, Salesforce, et al.) etc., including with respect to non-standard metadata fields not already listed in Appendix B, below.

d.    To the extent either party believes specific documents or classes of documents not already identified within this ESI Order should be produced in native format, or have been produced in TIFF format but are not reasonably usable, the parties agree to meet and confer in good faith as to the production of those Documents in an alternative or native format. A party shall not make unduly burdensome and unreasonable requests for production of Documents in native format, and a party shall not unreasonably refuse a request to produce Documents in native format.

C.    **Text Files.** Each ESI item produced under this ESI Protocol shall be accompanied by a text file as set forth below. All text files shall be provided as a single document level text file

7

in UTF-8 format for each item, not one text file per page. Each text file shall be named to use the Bates Number of the first page of the corresponding production item.

1.  **Extracted Text**. All email, un-redacted ESI, and redacted spreadsheets produced as native files, shall be provided with complete document-level extracted text files. Extracted text shall include all comments, revisions, tracked changes, speaker's notes, and text from documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows. Text extracted from emails shall include all header information that would be visible if the email was viewed in Outlook including: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), (5) the date and time of the email, and (6) the filenames of any attachments.

2.  **OCR.** In the event a document, other than spreadsheets (e.g., Excel files) that are produce in native format, contains text that is to be redacted, Optical Character Recognition ("OCR") text files should be provided for any un-redacted portions of the documents. Document-level OCR text files shall also be provided for all hard copy scanned documents. OCR software must be set to the highest quality setting for any previously unscanned paper documents, and reasonable quality control measures shall be used to ensure that the integrity of scanned copies of previously unscanned paper documents are preserved for OCR (e.g., pages are not angled or skewed,

8

text is not blurred or obscured, etc.). Documents containing foreign language text must be OCR'd using the appropriate settings for that language (e.g., OCR of Asian language documents must properly capture the relevant Asian characters). Settings such as "auto-deskewing" and "auto-rotation" must be turned on during the OCR process to maximize text recognition on any given page.

D.    **No Redactions for Relevance.** No redactions for relevance may be made within a produced document or ESI item except by court order on good cause shown. The Parties agree that, where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated. All metadata fields shall be provided, unless redaction of those fields is necessary to protect the asserted privilege, in which case the Parties agree to note when redactions have been applied to the contents of a given metadata field. The Parties understand that for certain Microsoft Excel documents or other file types or files, TIFF redactions are impracticable. These documents should be redacted in native format, with the original document preserved in an unredacted form.

E.    **Bates Numbering.** Bates Numbering must: (1) be unique across the entire document production; (2) maintain a constant prefix across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; and (4) be sequential within a given document. To the extent reasonably practicable, the production must also maintain consistent numbering across a family of documents. If a Bates Number or set of Bates Numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  If a document is reproduced for any reason, it shall be reproduced under the same Bates Number as the original production.  If additional pages are needed beyond

those allocated to it during the initial production, they shall be assigned additional number following a period (e.g. "ABC000001.001").

F.    **Color.** Documents containing color need not be produced in color, unless the color is necessary to understand, interpret, or assess the document, in which case the document shall have image files produced as a .jpg file or other suitable color format. The Producing Party will promptly produce a color image of a document upon request if the original document contains color.

G.    **Hard Copy Documents.** Collected and/or potentially responsive documents that exist in hardcopy will be scanned to TIFF image format and produced in accordance with the specifications set forth in this Order. A Party's hard copy documents that are not text-searchable shall be made searchable by OCR prior to production at that Party's cost. In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields (i.e., the "BegBates," "EndBates," "BegAttach," and "EndAttach" fields). The Parties will make their best efforts to unitize the documents correctly. Within 14 calendar days (or as otherwise agreed) after notice from a Requesting Party that a document appears to have been unitized incorrectly, the Producing Party shall either explain why the unitization is correct or produce a correctly unitized replacement. If any original hard copy document has any note or attachment affixed to it, the Producing Party shall scan and produce copies of the original hard-copy document along

with all notes and attachments to it in the same manner as other documents. If any such note or attachment obscures any information on the original hard copy document, the Producing Party shall also produce a copy of the original hard-copy document without the note or attachment affixed in order to make the underlying information visible.

**H.    Family Relationships.** Family relationships (e.g., the association between an attachment and its parent document) shall be preserved. A document and all other documents in its attachment range, emails with attachments, and files with extracted embedded OLE documents all constitute family groups. Attachments should be consecutively produced with their parent such that the Bates Numbers for the attachment(s) is/are directly subsequent to the parent document.

**I.    Complete Family Groups/Relationships.** If any member of a family group is produced, all members of that group must also be produced or else logged as privileged/work-product without breaking the grouping of these documents.

**J.    Hyperlinks**

1.    Documents produced in this Matter may be hyperlinked to other documents. The Receiving Party group may request a reasonable number of hyperlinked documents referenced in documents within the Producing Party's production that (i) are non-public, (ii) the Receiving Party group believes are relevant to the claims and defenses in this Matter, and (iii) refer to discrete stand-alone documents and not to, e.g., directories, landing pages, data sources, databases, or dynamic dashboards. The Receiving Party group will make these requests by providing the Producing Party with a list of hyperlinks and corresponding Bates numbers for the referencing document(s).

11

2.  Upon receiving such a request, the Producing Party will (i) engage in reasonable efforts to locate the hyperlinked document(s) at the identified location(s), (ii) identify the hyperlinked document(s) by Bates number if previously produced, and (iii) produce any non-privileged, responsive, hyperlinked document(s) that were not previously produced. The Producing Party will also use reasonable efforts to provide the Receiving Party with information reflecting the requested hyperlinked document's association with the referencing document, through reasonable metadata or other indicators, such as a table or list, sufficient to identify the referencing document(s) (e.g., by reference to the Bates number(s) containing the hyperlink).

3.  To the extent the hyperlinked documents requested by the Receiving Party group have already been produced by the Producing Party, the Producing Party agrees that such hyperlinked documents in the Receiving Party group's request will not be included when assessing whether to take the position that the Receiving Party group's requests have exceeded a "reasonable number of hyperlinked documents."

4.  If the requested hyperlinks refer to directories, landing pages, data sources, databases, or dynamic dashboards, the Producing Party shall inform the Requesting Party group of the same, and the parties agree to meet and confer in good faith on the relevance, burden, and proportionality of such hyperlinks and whether alternative means exist to provide the requested evidence.

5. If the requested hyperlinked documents cannot be collected or produced through reasonable efforts at the time of collection or production, the Producing Party will take reasonable steps to preserve those documents, and the Parties will promptly meet and confer regarding reasonable alternative methods for collecting and producing those documents.

6. The parties further agree to meet and confer in good faith to resolve any disputes concerning the timing and appropriateness of production of the requested hyperlinked documents.

K. **Embedded Documents**. The Producing Party shall use reasonable efforts, including standard e-discovery tools, to identify and extract embedded ESI documents (e.g., a spreadsheet embedded within a word processing document) and produce them as separate document records, maintaining the relationship to the parent document via BegAttach/EndAttach. Embedded documents shall be produced within a continuous Bates range with their parent document(s) and treated as attachments for responsiveness and privilege purposes. Purely decorative embedded objects (e.g., logos/icons) that contain no substantive content and are not reasonably likely to contain relevant metadata need not be produced. If a Producing Party contends extraction is not technically feasible or would impose undue burden, it shall preserve the embedded content, identify the affected sources and (if applicable) Bates ranges, and propose a reasonably usable alternative production that preserves the embedded content and its association to the parent (e.g., native production). The Parties shall meet and confer in good faith.

V. **ESI METADATA FORMAT AND PROCESSING**

A. **System Files.** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of

13

Standards & Technology as it exists at the time of de-NISTing. Additional culling of system file types based on file extension may include: WINNT, DRVS, Executable (exe), System File (dll), Program Installers, timezone files, and font files (e.g., fntdata, ttf). Other file types may be added to the list of excluded files by agreement of the Parties.

**B.** **Email Threading.** Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all responsive information from a thread, including attachments (regardless of their placement in the email thread) and header information. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread unless such lesser-included emails contain their own attachments.

**C.** **De-duplication.** A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates, as determined by standard hash values (e.g., MD5, SHA-1, or SHA-256) or equivalent duplicate detection methods. Deduplication shall be performed at the family level for emails and at the document level for loose ESI. Entire document families may be considered duplicate ESI, and deduplication shall not break apart families. When duplicate ESI exists in the files of multiple custodians, the Producing Party shall produce one copy and list all custodians who possessed it in the "All Custodians" metadata field in Appendix B. Likewise, the "All File Paths" field shall contain the file path(s) for each non-produced duplicate.

**D.** **Zero-byte Files.** The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.

**E.    Compressed Files.** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**F.    Password-Protected or Encrypted Files.** The Parties shall meet and confer regarding any ESI items that are password protected or encrypted.

**G.    Disclosure of Enterprise Messaging.** The Parties will disclose with their initial disclosures (or if this Order is entered after those initial disclosures are served, shall supplement those disclosures within 30 calendar days of entry of this Order) any use of enterprise messaging tools used in the ordinary course of business (e.g., Slack, Microsoft Teams, Zoom, WhatsApp, Sametime, Skype, Telegram, etc.), including the type of subscription and retention settings in place. The Parties will meet and confer regarding issues relating to the parameters for an inclusive collection of such data, the format of the production, and other unique issues to this type of data.

**H.    Messages or Chats.** The Parties agree that message, chat, and collaboration software ESI (e.g., SMS, MMS, RCS, iMessage, Microsoft Teams, Onedrive, Slack, Facebook Messenger, Signal, or Whatsapp) is discoverable subject to the considerations in FRCP 26(b). The Parties further agree that the most efficient and cost-effective methods for collecting and producing such ESI may depend on the specific collaboration software or text messaging platform in use. In the case of chat messages generated from the use of chat or messaging platforms, the Parties agree that it is necessary to produce relevant messages with the context of prior-in-time and subsequent-in-time chat messages. The Parties will meet and confer to discuss the methods to collect message or chat ESI, and the Parties agree to meet and confer regarding the processing and production format for relevant communications in collaboration software prior to any production of chat messages.

## VI.    SEARCH METHODOLOGY

**A.    In General.** The Parties shall meet and confer regarding search methods, if any, used to identify responsive documents and ESI. The fact that a document or ESI hits on an agreed-to search term shall not prevent any Party from withholding such file from production as not responsive to a request for production or on the grounds that the file is protected from disclosure by applicable privilege or work-product protection.

The use of a search methodology does not relieve a Party of its obligation to produce responsive documents. Documents or ESI known to be responsive—whether or not returned by the search methodology—must be produced unless withheld under a valid claim of privilege.

**B.    Disclosure of Search Parameters.** Before using any search methodology to identify documents for production, the Producing Party shall disclose to the Requesting Party the search terms, keywords, date limitations, custodians, non-custodial data sources, and any other parameter to be used as part of the search methodology. The Parties shall meet and confer within 14 calendar days regarding such parameters, as set forth in paragraph F ("Custodians") and G ("Search Terms").

**C.    Sources Subject to Search.** When a Party uses a search methodology, it shall identify the custodial and non-custodial sources to be searched. Documents that, based upon their context (e.g. custodial or non-custodial data source), should fairly be considered as part of a reasonably comprehensive search but are not amenable to text-based searching — such as images, hard copy documents, or certain foreign language documents — shall be reviewed without reliance on text-based search methodologies.

**D.    Datapoints to Assess Proposed Methodology.** At all meet and confers on a proposed search methodology, the Producing Party shall provide search term hit reports (per

paragraph V.H, "Hit Reports") or other data points sufficient to evaluate the method's effectiveness.

E.       **Notice of Alternative Methodologies.** If a Producing Party intends to use any automated process or review technology not specifically addressed by this Order to exclude documents from review or production, it shall provide notice to the Receiving Party and proceed subject to the requirements of §V(B)-(D) hereto.

F.       **Custodians.** The Producing Party shall identify up to six (6) custodians who the Producing Party reasonably believes to be the persons most likely to have relevant and discoverable ESI in their possession, custody, or control. If a Requesting Party believes that additional custodians should be added, then the Requesting Party will have the ability to identify additional custodians up to a total of twelve (12) custodians as of right, inclusive of those identified by the Producing Party. The parties may jointly agree to modify this limit without the Court's leave. If the Producing Party disputes that any individual identified as an additional custodian by the Requesting Party is likely to possess discoverable ESI (a "Contested Custodian"), the Parties shall meet and confer, and the Producing Party will provide information explaining why the Producing Party reasonably and in good faith believes each Contested Custodian is not likely to possess discoverable ESI. If the parties are unable to come to an agreement on the inclusion or exclusion of a Contested Custodian, they shall raise the issue with the Court. The Court shall also consider requests for additional custodians beyond those allowed as of right, upon a showing of good cause.

G.       **Search Terms.**

1.       **Use of Search Terms.** As it relates solely to negotiations regarding custodians and search terms, the Producing Party will conduct a reasonable

17

investigation to identify custodians and use search terms reasonably calculated to identify responsive materials consistent with the parties' discovery obligations pursuant to the Federal Rules of Civil Procedure. When a party discloses that its search methodology will include the use of search terms, the Parties shall meet and confer regarding the proposed search terms and custodial/non-custodial data sources. Prior to or during such meet and confer, the Producing Party shall provide all associated information required by this Order.

2. **Objections and Dispute Resolution.** If, after disclosure of the Producing Party's proposed search method, search parameters, and search terms, a Requesting Party believes in good faith that the Producing Party's proposal would result in production deficiencies, the Requesting Party may object and request different or additional search methods, parameters, or search terms. If unresolved within 14 calendar days after objection, either Party may submit the dispute to the Court.

3. **Modification to Agreed Search Parameters.**

   a. **Sources Subject to Search.** If, after the Parties identify initial document custodians and non-custodial sources, the Requesting Party believes that additional document custodians or sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional document custodians or sources and the good cause basis for the request. If the

request is unresolved within 14 calendar days either Party may submit the dispute to the Court.

    b.    **Search Terms.** If search terms are utilized, a Requesting Party may propose additional search terms as the litigation proceeds. In such cases, the Requesting Party will explain generally the good cause basis for the additional requested terms, which could include, for example, identifying by Bates number exemplar documents that support the request. If the request is unresolved within 14 calendar days, either Party may submit the dispute to the Court.

4.  **Use of TAR or AI-Assisted Review.** Nothing in this Order prevents the parties from using technology assisted review ("TAR") and other techniques (e.g. AI assisted review) insofar as their use improves the efficacy of discovery. The Parties shall meet and confer over the use of TAR or AI-Assisted Review and shall negotiate and enter into a separate TAR/AI-Assisted Review Protocol governing the methodology to be used in this Matter before any particular tool or methodology is applied.

**H. Hit Reports.**

1.  **Required Contents of a Hit Report.** A hit report shall contain the following for each proposed or modified search term:

    a.    The number of documents with hits for that term;

    b.    The number of unique documents for that term (i.e., documents which do not have hits for any other term); and

19

  c. The number of family members requiring review in connection with all documents with hits.

  d. A hit report will also contain the total number of documents returned by the set of search terms, as well as the total number of documents plus family members.

 2. **Resolution of Disputes Regarding Search Terms.** The Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application as outlined in Section G.

## VII. PROPRIETARY SOFTWARE, SYSTEMS AND DATA STORAGE LOCATIONS

 A. **Software.**

  1. **Proprietary Software and Accessibility.** To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software (whether created by the Party or not), the Parties shall meet and confer to minimize any expense or burden associated with producing such documents in an acceptable format, including addressing issues related to obtaining access to the software and any operating manuals. During the meet and confer, the Producing Party shall have available a subject matter or technical expert to address questions about the software's capabilities and potential production formats for the information retrieved from it.

  2. **Proposal for Retrieval and Production.** If the Producing Party identifies relevant information contained exclusively in proprietary software, it shall provide a written proposal for the retrieval methodology and/or production format. The Parties shall meet and confer within 14 calendar days of such

20

written disclosure to discuss any necessary adjustments. Acceptable forms of production for such ESI may include, without limitation, the provision of direct or remote access to a computer capable of running the software and accessing the relevant data.

**B.    Hardcopy Document Storage.**

To the extent that relevant documents and evidence are stored in hard copies in a storage facility, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents stored in those locations.

Prior to any meet and confer regarding hardcopy document storage, the Producing Party shall provide to the Receiving Party either a table of contents or inventory listing what is stored in the physical storage location. If production or searching is not feasible, the Receiving Party shall be able to inspect the hard copy records at the physical location in person.

**C.    Structured Data**

To the extent discoverable ESI resides in a structured database, the Parties shall meet and confer to agree upon an appropriate and efficient methodology to search for and produce responsive information from that database.  In the course of the meet and confer(s) regarding any structured data system(s) that may contain discoverable ESI, the Producing Party shall have a knowledgeable technical representative available and shall provide a sample export or sample report from the relevant system(s) in a reasonably usable electronic format (e.g., Excel/CSV), along with any existing data dictionary. The parties will use that sample to identify the relevant fields and agree on the format and scope of any structured-data production, and the Producing Party will provide reasonable written clarifications necessary to interpret the sample (including material codes/abbreviations).

**D.      ESI Located on Mobile Devices.**

To the extent that relevant ESI exists on mobile devices that is not duplicative of ESI that is more readily available elsewhere, the Parties agree that such ESI is discoverable subject to the considerations in FRCP 26(b). Such mobile device ESI will be collected using commercially available tools sufficient to capture all reasonably available relevant information and metadata. The Parties anticipate that this may include non-standard metadata fields not listed in Appendix B, below.

## VIII.    PRIVILEGE LOGS

Any document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work product doctrine, or any other claim of privilege from discovery (collectively referred to hereinafter as "privilege") is to be identified by the Producing Party in a privilege log.

**A.      File Format.**  Privilege logs will be produced in an Excel format.

**B.      Metadata.** A log of the documents withheld or redacted for privilege will be generated from the following corresponding metadata fields to the extent they exist as electronic metadata associated with the original electronically stored information:

- Subject/Title
- Attachment Bates
- File Name
- Custodian(s)
- Sender/Author
- Recipient/To
- CC
- BCC
- Sent Date/Time or Created Date/Time
- Family relationship (e.g., identifying parent emails and attachments)
- File Extension

22

Parties may substitute an alternative description of the content within the identified metadata field(s) where the content of the metadata field reveals privileged information. Where the Producing Party has substituted an alternative description of the content within the identified metadata field(s), it shall identify each instance in which it has done so and briefly state the reason for the modification.

C.      **Other content**s. Parties will also include on the privilege log fields containing:

1.      a unique document ID or Bates number;

2.      information sufficient to understand the family relationship of withheld or redacted documents;

3.      the privilege asserted (e.g., attorney-client, work product);

4.      Whether a document is being withheld or redacted; and

5.      a description of the nature of the withheld or redacted document or communication in a manner that, without revealing information claimed privileged, will enable a party to assess the privilege claim, with the exception that the basis for a redaction need not be logged if it is obvious from context.

D.      **Treatment of Families.** Attachments to emails shall be logged as separate documents on the log, with family relationships identified. Each withheld or redacted parent email or attachment must be logged as its own entry, and if the document belongs to a family that is partially produced, the entry must also identify the Bates number of the first produced document in that family (the produced parent, or if the parent is withheld, the first produced attachment).

E.      **Listservs.**  To the extent that Listserv or group email addresses are identified on the privilege log, the Designating Party shall work in good faith to identify individuals and/or

groups of individuals who make up such Listserv or group email (the "Membership") at the time the relevant communication was sent, to the extent reasonably ascertainable. If the Designating Party cannot reasonably determine the Membership as of that time, it shall identify the Membership in its current form and state that historical membership information is not reasonably available.

      **F.**     **Hard Copy.** To the extent a Producing Party seeks to withhold or redact any hard-copy documents or documents lacking sufficient metadata, the Producing Party shall log the following information for such documents consistent with the Rules:

1. a statement of the ground(s) alleged for withholding all or part of such document;

2. the date the document was prepared or distributed;

3. the identity of the document's author, along with an indication of any author who is an attorney;

4. the identity of all recipients of the document, along with (1) an indication of any recipient who is an attorney and (2) an indication of any recipient who is a third party, as well an indication of the third-party relationship;

5. a description of the withheld or redacted document in a manner that, without revealing information claimed privileged or protected, will enable a party to assess the privilege claim, with the exception that the basis for a redaction need not be logged if it is obvious from context; and

6. a unique document ID or Bates number.

G.     **Redactions.** Notwithstanding a claim of privilege, any document containing both privileged and non-privileged matter must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself.

H.     **Post-Complaint Communications**.  Privilege log identification is not required for privileged communications exchanged after the filing of the Complaint. No other document withheld on the basis of Privilege may be excluded from a log except as specifically agreed to by the parties in writing.

I.     **No Categorical Logging**. Absent agreement in writing by the Parties, documents withheld or redacted on the basis of privilege may not be logged categorically.  In other words, each description of the withheld or redacted document required in subsection (C) and/or (F) of this section shall be created from an assessment of the individual document.

## X.     CHALLENGING PRIVILEGE

A.     A Receiving Party may challenge a Producing Party's claims of privilege or work product protection at any time.

B.     The Receiving Party shall set forth in writing their challenges and the Producing Party shall have fourteen (14) calendar days to respond.  Failure to respond timely will be presumed to terminate the meet and confer process.

C.     Within seven (7) calendar days of the Producing Party's response, the parties shall meet and confer to attempt to resolve the challenge.

D.     Once a Receiving Party initiates a written challenge pursuant to paragraph A herein, the meet and confer process shall be presumed concluded no later than thirty (30) calendar days later, inclusive of the response times in paragraphs B and C.

**E.** If the Receiving Party lodges a challenge to a withheld or redacted document, the Parties agree to meet and confer regarding the claim of privilege pursuant to the guidelines herein. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court.

DATED:  March 19, 2026                          Respectfully Submitted,

Counsel for the Parties:

By: /s/ Joseph C. Gratz

Joseph C. Gratz
Timothy C. Saulsbury
Tiffany Cheung
**Morrison & Foerster LLP**
425 Market Street
San Francisco, CA 94105
Phone: 415-268-7000
Fax: 415-268-7522
Email: JGratz@mofo.com
Email: tsaulsbury@mofo.com
Email: tcheung@mofo.com

Sara Talebian
**Morrison & Foerster LLP**
2100 L St NW
Washington, DC 20037
Phone: 202-887-8791
Email: stalebian@mofo.com

*Attorney for Defendants Bloomberg L.P. and
Bloomberg Finance L.P.*

By: /s/ Nada Djordjevic

Greg G. Gutzler
**DICELLO LEVITT LLP**
485 Lexington Avenue, Tenth Floor
New York, New York 10017
Telephone: (646) 933-1000
Facsimile: (646) 494-9648
ggutzler@dicellolevitt.com

Adam J. Levitt
Amy E. Keller
Nada Djordjevic
James A. Ulwick
Rebecca Trickey
*Admitted Pro Hac Vice*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel. (312) 214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
ndjordjevic@dicellolevitt.com
julwick@dicellolevitt.com
rtrickey@dicellolevitt.com

Mr. Seth Haines
Mr. Timothy Hutchinson
*Admitted Pro Hac Vice*
RMP, LLP
5519 Hackett Street, Suite 300
Springdale, Arkansas 72762
Tel: (479) 443-2705
shaines@rmp.law

thutchinson@rmp.law

Mr. Scott Poynter
*Admitted Pro Hac Vice*
POYNTER LAW GROUP
4924 Kavanaugh Blvd.
Little Rock, AR 72207
Tel. (501) 812-3943
scott@poynterlawgroup.com


*Attorney for the Plaintiffs and Proposed
Class*

SO ORDERED.

Date: March 23, 2026

New York, New York

MARGARET M. GARNETT
United States District Judge

**APPENDIX A**
**TECHNICAL SPECIFICATIONS**

**IMAGES:**

- o  Produce documents as single page, black and white, Group IV, TIFF files.

- o  Image Resolution 300 DPI.

- o  File Naming Convention: Match Bates Number of the page.

- o  Insert placeholder image for files produced in Native Format.

- o  Original document orientation shall be retained.

**SPECIAL FILE TYPE INSTRUCTIONS:**

- o  Certain documents shall be produced in Native Format as required by Section III of this Protocol.

**FULL TEXT EXTRACTION/OCR:**

- o  Produce full extracted text for all file types including text of links to embedded content (i.e., URLs).

- o  Produce OCR text for any hard copy document or non-spreadsheet redacted document.

- o  Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF, etc.) where extracted text cannot be provided, using industry standard OCR technology (redacted text will not be produced).

- o  Produce OCR text for any redacted document.

- o  Production format: Single text file for each document (not one text file per page).

- o  File Naming Convention: Match BegBates Number of the document.

**LOAD FILES:**

Data Load File

- o  The data load file should use standard Concordance delimiters:

  - •  Comma - ¶ (ASCII 20)

  - •  Quote - þ (ASCII 254)

  - •  Newline - ® (ASCII 174)

- o  The first record should contain the field names in the order of the data.

- o  All date fields should be produced in mm/dd/yyyy format.

- o  Use carriage-return line-feed to indicate the start of the next record.

- o Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.

- o The name of the data load file should mirror the name of the delivery volume, and should have a DAT extension (i.e., ABC001.DAT).

- o The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

Image Load File

- o The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.OPT).

- o The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- o There should be one row in the image load file per TIFF image.

- o Every image in the delivery volume should be contained in the image load file.

- o The PageID should be named the same as the Bates Number of the page.

- o Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.);a separate volume should be created for each piece of media delivered.

- o The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount.

**APPENDIX B**
**METADATA FIELDS**

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| BegBates | Document Starting Bates #. | x | x | x |
| EndBates | Document Ending Bates #. | x | x | x |
| BegAttach | Beginning Bates of attachment range. | x | x | x |
| EndAttach | Ending Bates of attachment range. | x | x | x |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format. | x | x | x |
| Source | This is the source in which non-custodial data was collected from. | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited. | x | x | x |
| File Name | File name of document (Original including Extension). | x | x | |
| File Extension | File extension of original document. | x | x | |
| Email Outlook Type | Type of Outlook item, e.g., email, calendar item, note, task. | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document. | | x | x |

31

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Author | Document author of a non-Email document. | | x | x |
| Email Subject | Subject of email. | x | | |
| From | Email author. | x | | |
| To | Email recipients. | x | | |
| CC | Email copyees. | x | | |
| BCC | Email blind copyees. | x | | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format). | x | | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format). | x | | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format). | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format). | | x | |
| Time Zone | Time zone of the date-time value of the file. | x | x | |
| Parent Date-Time | Date and time of the parent of a document family applied to all family members (mm/dd/yyyy hh:mm:ss format). For email parents, use Date-Time Sent. For loose ESI parents, use Date-Time Last Modified. | x | x | |
| File Path | File/path of the location where the item was located during the normal course of business. | x | x | |
| All File Paths | File Path that would have been provided for each version of the document that was not produced due to de-duplication. | x | x | |
| File Size | Size of the individual file in bytes | x | x | |

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| HasHiddenContent[1] | Y if hidden content, otherwise N or empty. | | x | |
| Physical Location | The actual location where the document is stored or preserved. | | | x |
| Box Number or unique identifier | The box number associated with archived documents. | | | x |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Production Volume | Production volume name, including a volume number and a prefix. which indicates the producing Party. | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order, if any. | x | x | x |
| Redacted | Descriptor for documents that have been redacted, yes or y if document contains redactions, otherwise n or blank. | x | x | x |
| Redaction Reason | This field should be populated by the basis for the redactions on this document. Multiple entries shall be separated by semicolons. | x | x | x |
| Native Link | Path to produced native file used for linking. | x | x | x |
| Text Link | Path to produced text file used for database linking. | x | x | x |
| Related Productions BegBates | Beginning Bates# (including Prefix) used when produced in the other legal matter. | x | x | x |

---

[1] "Hidden Content" for purposes of this field shall include tracked changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.

33

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Related Productions EndBates | Ending Bates# (including Prefix) used when produced in the other legal matter. | x | x | x |
| Related Productions BegAttach | Beginning Bates Number of the first document in an attachment range used when produced in the other legal matter. | x | x | x |
| Related Productions EndAttach | Ending Bates Number of the last document in attachment range used when produced in the other legal matter. | x | x | x |
| Related Productions Short Caption | The case caption or other legal identifiable name of the other legal matter. | x | x | x |